**Bodi LUKASEWYCH, Plaintiff,**

v.

**WELLS, RICH, GREENE, INC., and ITT Sheraton Corporation, Defendants.**

**No. 90 Civ. 3045 (CSH).**

United States District Court, S.D. New York.

Oct. 16, 1990.

Russo & Burke, New York City (Joel L. Hecker, of counsel), for plaintiff.

Satterlee Stephens Burke & Burke, New York City (James F. Rittinger, Mark A. Fowler, of counsel), for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff Bodi Lukasewych, a professional photographer, brings this action against defendants Wells, Rich, Greene, Inc. ("WRG"), an advertising agency, and ITT Sheraton Corporation, a hotel chain and WRG's client. The action arises out of defendants' use of copyrighted commercial photographs taken by plaintiff. Plaintiff asserts subject matter jurisdiction under 28 U.S.C. § 1338. Defendants move to dismiss the complaint under Rules 12(b)(1) and 12(b)(6), F.R.Civ.P., or in the alternative for summary judgment under Rule 56, on the ground that the case does not arise under the act of Congress relating to copyrights, and accordingly this Court lacks subject matter jurisdiction. The parties submit affidavits which enhance the pleadings, and so I treat the motion as one for summary judgment. No party suggests the need for additional factual submissions, and so the motion is ripe for decision. If defendants' contention is well founded, this Court lacks jurisdiction, for the parties are not diverse in their citizenship.

### Background

It is common ground that WRG, an advertising agency, retained on behalf of its client Sheraton the services of plaintiff, a professional photographer, to photograph various hotel settings in California. These photographs were intended for advertising use in print media, posters, brochures, and other trade and publicity use. Plaintiff shot the photographs on November 14, 15, and 16, 1989. He delivered the photographs to WRG on or about November 23, 1989. Affidavit of Bev Don at ¶ 3.

On November 30, 1989, Don, the manager of art buying for WRG, issued three purchase orders to plaintiff for the job. WRG prepared a separate purchase order for each of the three California locations. The total photographer's fee of $15,500 had been previously agreed. The allocation of that total fee among the three locations was for the convenience of defendants.

Each purchase order is in like form. The front page consists of typed and printed material. The back page contains a number of printed paragraphs. Two of the purchase orders recite in typed language on the front page:

Fee allows for use of photographs in Print Media (US & Canada) for 2 years. Posters in Hotels, brochures, trade and publicity use for an unlimited time.

The third purchase order provides in typed language:

Fee allows for use of photographs in Regional Publications and/or NBA/Team related Publications.

*See,* respectively, Exhibits B, D, and C to Don affidavit.

The front page of each purchase order contains the printed capitalized instruction: "TO BE SIGNED AND RETURNED TO WRG." Each purchase order was signed by Don. Below his signature, there is a signature line for the "Supplier", preceded by the printed phrase "Agreed and Accepted." Plaintiff signed each of the purchase orders on those lines and returned them to WRG.

The purchase orders, in addition to specifying the allocated fees for each location referred to in the purchase order, contain the phrase: "plus expenses as estimated."

The reverse side of each purchase order contains a printed paragraph which provides in pertinent part:

This purchase order is complete and contains all of the terms, conditions and covenants pertaining to the materials or work to be performed hereunder and shall not be changed, modified or amended except by agreement in writing, signed by the parties hereto.

Plaintiff's litigation position, among others, is that while defendants have paid his fee, they have not fully reimbursed him for expenses actually incurred. The particulars of that dispute appear from Count II of the complaint, captioned "Breach of Contract," which alleges in ¶ 27:

On December 18, 1989 plaintiff billed WRG for his fees, in the sum of $15,000 and his actual expenses in the sum of $23,443.73, totaling $38,943.73, of which only the sum of $28,377.14 has been paid, leaving a balance due and owing in the sum of $10,566.59.

Plaintiff's opposing affidavit offers as Exhibit A a printed invoice on his company's stationery with handwritten notations. Costs are listed under two columns: one captioned "Estimate," and other captioned "Actual." Plaintiff says in his affidavit that after WRG first contacted him concerning this project, and requested "an estimate of my expenses as well as my fees, I submitted this estimate, which contained my usual terms.... The 'Estimate' column was submitted to WRG; the additional numbers were added later." Lukasewych affidavit at 7. Plaintiff does not say when or under what circumstances the "Actual" expense figures were filled in.

Plaintiff's form invoice contains on the front page the notation: "SUBJECT TO ALL TERMS ON REVERSE SIDE." The reverse side consists of a number of lettered printed paragraphs. One of them, ¶ (f), provides in part: "Grant of right of usage is conditioned on payment. Payment required within 30 days of invoice...." ¶ (h) provides that disputes arising out of the contract represented by the invoice will be resolved by arbitration before the American Arbitration Association.

While defendants point out that defendants' form contains no notation with respect to dates, name of the agency, job date, shot date, art buyer, and the like, the handwritten references to "3 shots in Long Beach" and "2 shots in San Diego" track the purchase orders subsequently prepared by WRG. The "Actual" expenses on plaintiff's Exhibit A also track the actual expenses claimed on plaintiff's printed invoice dated December 18, 1989 from which the present disputes flow. There is no genuine dispute that the handwritten invoice, Plaintiff's Exhibit A, relates to the project in suit. Nor do defendants deny that WRG at least received the handwritten estimate of costs, Plaintiff's Exhibit A, prior to the taking of the photographs.

It is also the fact, as defendants stress, that they did not sign plaintiff's original

handwritten estimated invoice, although the form does not contain a designated signature line for the photographer's "client" (as an entity in WRG's position is referred to in plaintiff's printed form). As noted, following completion of the project plaintiff sent to WRG a typed invoice, on the same form. All the details of the job order are now filled in. No entries are made in the "Estimate" column. Under the "Actual" column, expenses are listed which exceed the prior handwritten estimate. It is these expenses in excess of the estimates that defendants refuse to pay, thereby triggering plaintiff's complaint.

That complaint contains three counts. In Count I plaintiff, alleging that the photographs are copyrighted property, asserts the traditional claims of a copyright owner for injunctive relief and an accounting. As noted, Count II is captioned "Breach of Contract" and claims a balance due and owing in the sum of some $10,000. Count III is captioned "Dishonored Check." It alleges that in March 1990 plaintiff and WRG had settled their outstanding differences and WRG gave plaintiff a check in the agreed amount in exchange for a general release, but that WRG thereafter stopped payment on the check. Those circumstances give rise to a claim that plaintiff calculates at $13,092. Plaintiff adds a claim for punitive damages.

Since subject matter jurisdiction based upon diversity of citizenship is not available to the plaintiff, the case is properly brought in this Court only if it falls within 28 U.S.C. § 1338.

### Discussion

28 U.S.C. § 1338(a) provides in relevant part that "the district courts shall have original jurisdiction of any civil action *arising under* any act of Congress relating to ... copyrights.... Such jurisdiction shall be exclusive of the jurisdiction of the courts of the states ... in copyright cases" (emphasis added).

■ Not every action affecting or involving copyright "arises under" the copyright act. Boorstyn, *Copyright Law* ¶ 10:3 at 277 (1988); *II P. Goldstein, Copyright,* § 13.2.1.2 at 394 (1989); III Nimmer, *Copyright* § 12.01[A] at 12–5 (1989); *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 825, 826 (2d Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). For example, "[f]ederal courts have no jurisdiction under [S]ection 1338(a) over actions that depend for their resolution on state laws governing contract enforcement or construction, or the ownership or transfer of property interests." Goldstein, *op. cit.*

■ Analysis of the general rule's application in particular cases, not always easy, inevitably begins with Judge Friendly's statement in *T.B. Harms Co., supra* at 339 F.2d 828:

> An action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement ... or asserts a claim requiring construction of the Act, ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test. [Citations omitted].

Cases subsequent to *T.B. Harms Co.* in this Court reflect areas of disagreement between its judges. For example, Judge Sand is inclined to look behind the allegations of the complaint to assess whether the action turns primarily on claims of breach of contract. *See Berger v. Simon & Schuster,* 631 F.Supp. 915, 917 (S.D.N.Y. 1986) ("Although plaintiff's complaint is framed entirely in terms of infringement, we find that it is really an action on a contract, wherein plaintiff in substance, albeit not in form, is seeking a declaration that certain conditions precedent to a revocation of a license have taken place.") Defendants at bar rely upon Judge Sand's opinion in *Berger,* which held that the claim in question did not arise out of the copyright act.

In *Foxrun Workshop, Ltd. v. Klone Manufacturing, Inc.*, 686 F.Supp. 86, 90 (S.D.N.Y.1988) a case sustaining copyright jurisdiction upon which plaintiff at bar relies, Judge Leval expressed disagreement with *Berger* and other cases which focus upon the substance of the plaintiff's claim ("The view that the federal jurisdiction depends upon what is at the 'heart of the controversy,' ... or by 'the fundamental controversy,' ... can leave jurisdiction open to question as the parties conduct discovery and refine the issues.")

So it may; but if the particular circumstances make it clear that plaintiff's claim turns entirely upon state law and does not in any meaningful sense "arise under" the federal copyright act, then far better to say so at the outset, rather than engage the litigants and the federal court in discovery and other effort, when plaintiff's property remedy lies in the state forum.

The case at bar is such a case.

Accepting for the moment the correctness of Judge Leval's view that the manner in which the plaintiff frames his complaint is paramount, the complaint at bar does not satisfy Judge Leval's criteria. The dispute in *Foxrun Workshop* arose over the termination of license agreements between plaintiff and defendants covering items of apparel covered by plaintiff's registered trademarks.[1] The plaintiff in *Foxrun Workshop* limited his federal complaint to allegations of trademark infringement. Plaintiff claimed declaratory and injunctive relief, and accounting and statutory treble damages. Plaintiff simultaneously pressed its contract claim in the state court. Thus Judge Leval was able to state at 686 F.Supp. 89:

> The theory of the complaint is not the enforcement of contract rights to reversion and royalty payments. Rather, the complaint alleges claims under the Lanham Act. Although Workshop has apparently instituted parallel state adjudication seeking damages to the breech of the licensing agreements, it has directed

this pleading against the offending use. (emphasis added).

Similar pleadings were involved in the two Second Circuit cases Judge Leval cited, *Koufakis v. Carvel*, 425 F.2d 892 (2d Cir. 1970), and *Kamakazi Music Corp. v. Robbins Music Group*, 684 F.2d 228 (2d Cir. 1982). In *Koufakis*, the Court of Appeals reasoned that because the complaint was framed as one for infringement, rather than breach of contract, the action was held to be "properly initiated in federal court." Similarly, in *Kamakazi Music Corp.*, in which plaintiff at bar reposes a misplaced reliance, the Second Circuit said at 684 F.2d 229:

> Kamakazi's complaint ... clearly stated claims under the Copyright Act. *It did not mention breach of contract as a theory of liability.* (emphasis added).

By way of contrast, the complaint at bar, after reciting the copyright litany in Count I, then alleges in Counts II and III quintessential state law contract claims arising out of a failure to reimburse expenses and a dishonored check.

While that difference in pleading is sufficient to distinguish on their facts *Foxrun Workshop* and the Second Circuit cases upon which Judge Leval relied, I do not rest my conclusion that this is not a copyright case solely upon that basis.

Plaintiff contends that a number of the cases upon which defendants rely deal with the ownership of a copyright or a subsequent breach of a licensing agreement, giving rise to the issue of reversion of copyright. Plaintiff argues that "since the license herein *never* commenced," Brief at 7, those cases do not apply, so that his claim is one for copyright infringement, pure and undistilled.

■ That proposition is arguable only if the unsigned handwritten estimate of plaintiff's expenses, his exhibit A, constitutes the agreement between the parties.

It is in that document that plaintiff finds the phrase upon which his entire position is founded: "Grant of right of usage is condi-

---

1. Trademark jurisdiction is also conferred upon federal district courts by 28 U.S.C. § 1338(a), although unlike copyright that jurisdiction is concurrent which that of the states.

tioned on payment." Plaintiff contends that since he has not been paid the amount he claims, defendants' license to use his copyrighted photographs never became effective, so that defendants are *ipso facto* infringers.

But the record compels the conclusion of law that the purchase orders prepared by WRG and signed by plaintiff constitute the contract between the parties. Plaintiff signed those purchase orders, thereby signifying his agreement to their terms and conditions. Plaintiff's explanation that he signed the purchase orders only to obtain payment after WRG allocated the fee among the three locations (affidavit at ¶¶ 11 and 12), is not sufficient under familiar principles of contract law to relieve him from the consequences of his signatures. Furthermore, the purchase order contracts expressly provide that they are "complete" and contain "all of the terms, conditions and covenants pertaining to the materials or work to be performed hereunder and shall not be changed, modified or amended except by agreement in writing, signed by the parties hereto." Plaintiff claims to perceive ambiguities and contradictions in the WRG purchase order, but there is nothing unclear about the intent or effect of that language, which supersedes any prior writings.

The purchase orders specified with precision the use which defendants could make of the photographs. There is no suggestion that they have exceeded that licensed use. What the case comes down to is a dispute between plaintiff, who claims that defendants have not paid him all the money he demands, and defendants' response that plaintiff has impermissibly increased previously estimated expenses. Judge Sand's analysis in *Berger* at 917–18 fully applies to the case at bar:

> The point remains that the initial and primary role of the trial court faced with this case will be to interpret a contract and that no copyright issues will remain after this interpretation has been made.

Defendants' motion is granted. The Clerk of the Court is directed to dismiss the complaint without prejudice and without costs for want of federal subject matter jurisdiction.

It is SO ORDERED.