Harris O. SCHOENBERG,
Plaintiff–Appellee,

v.

SHAPOLSKY PUBLISHERS, INCORPORATED, Ian Shapolsky and Steimatzky Publishing of North America, Inc., Defendants,

Samuel A. Abady, Esq., Appellant.

No. 1541, Docket 91–9311.

United States Court of Appeals,
Second Circuit.

Argued May 19, 1992.

Decided Aug. 6, 1992.

Samuel A. Abady, New York City, (Henry L. Saurborn, Jr., Kurzman Karelsen & Frank, New York City, of counsel), for appellant.

Bernard Malina, New York City, (Malina & Wolson, New York City, of counsel), for plaintiff-appellee.

Before: PRATT, ALTIMARI and FRIEDMAN,* Circuit Judges.

ALTIMARI, Circuit Judge:

Non-party appellant Samuel A. Abady, the former attorney for defendants Shapolsky Publishers, Inc. *et al.* ("the Publishers"), appeals from the December 10, 1991 order of the United States Court for the Southern District of New York (Edelstein, *J.*), which held him in contempt for willful violation of the district court's discovery order. *See* Fed.R.Civ.P. 37. In addition to holding Abady in contempt, the December 10 order awarded attorneys' fees and costs to plaintiff pursuant to, alternatively, Rule 37 or 28 U.S.C. 1927 (1988).

On appeal, Abady challenges the contempt citation contending that the district court was without subject matter jurisdiction to impose sanctions. Abady further argues that the contempt order was imposed in violation of his constitutional right

---

* The Honorable Daniel M. Friedman, United States Court of Appeals for the Federal Circuit, sitting by designation.

to due process. Abady also maintains that coercive sanctions are inappropriate here because he is unable to comply with the district court's order due to his termination as defendants' counsel. Finally, Abady asserts that the conduct underlying the contempt order was an appropriate, non-sanctionable legal strategy.

For the reasons set forth below, we vacate the district court's order and remand the case for proceedings in accordance with this opinion.

## BACKGROUND

The underlying action which gave rise to the present appeal is the contentious litigation between plaintiff-appellee Harris O. Schoenberg, the author of "A Mandate for Terror: The United Nations and the PLO", and defendants Shapolsky Publishers ("Shapolsky"), its president, Ian Shapolsky, and Steimatzky Publishing of North America, Inc. ("Steimatzky"), concerning the allegedly unauthorized publication of Schoenberg's manuscript. On January 18, 1991, Schoenberg commenced this action against the Publishers in the United States District Court for the Southern District of New York (Edelstein, J.), alleging copyright infringement, breach of contract, and inducing breach of contract.

According to the complaint, Schoenberg entered into a written agreement with Steimatzky on January 5, 1985, for the publication of Schoenberg's work. Pursuant to this agreement, Schoenberg retained ownership of the copyright and granted Steimatzky a license to publish the manuscript subject to the terms of the contract. The contract obligated Steimatzky to publish the work within six months of receipt of the final draft of the manuscript, to promote and market the work in book form, to license editions of the work in languages other than English, and to license excerpts of the work in periodical publications. In 1986, Shapolsky became the successor to the business of defendant Steimatzky, and assumed certain assets and liabilities of Steimatzky, including its contract with Schoenberg.

Schoenberg's complaint alleges that both Steimatzky and Shapolsky breached the contract because they failed to: (1) publish Schoenberg's manuscript until 1989, despite the submission of a final draft in 1985; (2) list the work in their promotional catalog until May 1989 or promote the work generally; (3) respond to inquiries from other publishers regarding purchase of foreign rights to the work; and (4) render any quarterly royalty statements or make any of the royalty payments due thereunder. The complaint maintains that these actions by defendants constitute a breach of the contract, which terminated the rights of defendants to publish the work. Consequently, Schoenberg alleges that subsequent publication of the work resulted in an infringement of his copyright, thereby giving rise to an action under the Federal Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* ("the Copyright Act"). Because there is no diversity of citizenship between the parties, this is the only basis upon which the district court could exercise jurisdiction.

Schoenberg served defendants with his first document request and first set of interrogatories on February 8, 1991. On March 13, the Publishers answered the first set of interrogatories, and their counsel, appellant Abady, sent plaintiff a letter in which he represented that the documents requested would be produced "forthwith." Despite Abady's representation, the Publishers failed to comply with Schoenberg's discovery request. Abady subsequently received three letters between March 13 and March 25 from plaintiff's counsel urging compliance, but he did not respond by producing the documents.

In the interim, an amended answer was served on March 15, 1991, setting forth lack of subject matter jurisdiction as the first affirmative defense. The next day, Abady requested a pre-motion conference in conformity with the Judge Edelstein's rules, for the purpose of presenting defendants' motion to dismiss for lack of subject matter jurisdiction. At a pre-trial conference held on June 5, 1991, the district court refused to address the issue of subject matter jurisdiction and prohibited Abady

from submitting his client's motion to dismiss until the Publishers had responded to Schoenberg's request for the production of documents. The district court did, however, allow Schoenberg to submit a motion, pursuant to Fed.R.Civ.P. 37, to compel discovery.

By order dated June 19, 1991, the district court granted this motion and found that "the failure of defendants to comply with discovery is without justification." This order directed that "on or before June 26, 1991, defendants shall, without objection, produce all the documents requested in Plaintiff's First Request for Production of Documents at the offices of plaintiff's counsel."

Before receiving the written order, Abady wrote a letter to the district court, dated June 19, 1991, urging the court to reconsider its oral order forbidding Abady from filing defendants' motion to dismiss. In this letter, Abady discussed in detail the subject matter jurisdiction issue, and argued that the court had no discretion to ignore this issue. Abady also informed the court that he would seek a writ of mandamus from the Court of Appeals unless the district court allowed the Publishers to file a motion to dismiss before they were compelled to complete discovery.

After receiving the court's written order, Abady again wrote the district court. In a letter dated June 20, 1991, Abady asked the court to entertain defendant's motion to dismiss. Abady noted that the court's failure to do so put him in an awkward position, because while he did not wish to bring a mandamus action in the Second Circuit, he would feel compelled to do so if the court continued to refuse to entertain his client's motion to dismiss. The district court responded by advising Abady that he was forbidden from filing the motion to dismiss.

On behalf of the Publishers, Abady filed a petition for writ of mandamus in the Court of Appeals on July 12, 1991. The petition for the writ requested this Court to direct the district court to vacate its June 19, 1991 order compelling discovery and immediately to consider and rule on the Publishers' motion. In the alternative, the Publishers requested that this Court treat the district court's deferral of defendant's motion as a denial and asked the Court to rule on it. On August 13, 1991, this Court denied the Publishers' motion.

Immediately after the decision was rendered from the bench, Schoenberg's counsel promised Abady that Schoenberg would not move for contempt until August 20, 1991 in order to give the Publishers time to comply with the discovery request. The Publishers nevertheless failed to comply by this date. Thereafter, on August 23, 1991, plaintiff's counsel requested a pre-motion conference for the purpose of seeking permission to move for contempt against the Publishers and sanctions against the Publishers and their counsel, appellant Abady. This conference was scheduled for September 4, 1991 at 4:00 p.m. On September 4, 1991, an envelope containing documents allegedly responding to Schoenberg's discovery request was delivered to plaintiff's counsel approximately five hours before the conference. Believing that he had satisfied the court's prerequisite to filing the Publisher's motion to dismiss, Abady filed the motion on September 4, immediately prior to the conference, and noticed a return date of September 17, 1991. However, the district court refused to consider the motion at that time, or at any time thereafter.

At the September 4th pre-motion conference, Schoenberg contended that the Publisher's production was defective in a number of respects: the production contained no bates numbers; no written responses were given; there were unexplained redactions; and responsive documents were alleged to be missing. At this conference Abady attempted to show the court that he had complied with the discovery request. The district court did not allow Abady an opportunity to support this contention at the conference, but instead informed Abady that he would have ample opportunity to be heard at a contempt hearing.

An order to show cause for contempt and sanctions was issued by the district court on September 27, 1991. This order was

directed to defendants, "for the purpose of showing cause why *defendants* should not be held in contempt of court for failing to comply with this Court's discovery order." (emphasis added). The order also required a showing of cause as to why sanctions should not be imposed on defendants and/or on defendants' counsel pursuant to Fed.R.Civ.P. 11 or other authority, requiring them to pay reasonable attorneys fees incurred by the plaintiff, in connection with, among other things, defending the petition for writ of mandamus directed against the district court.

On October 15, 1991, a contempt hearing was held. Paul C. Kurland, a member of Snow Becker Krauss, P.C., appeared for the defendants, because appellant had resigned from the firm two days earlier. However, Kurland did not represent Abady at this hearing. When the court informed Kurland that it was going to consider contempt against counsel as well as the defendants, Kurland reminded the court that the order to show cause did not seek contempt against the attorneys. The court responded that it was bound neither by this omission nor by the fact that the order to show cause only sought to impose sanctions against counsel pursuant to Fed.R.Civ.P. 11.

At the conclusion of the hearing the court delivered an extremely harsh rebuke against counsel in this matter, and despite the fact that Mr. Kurland was not present as Abady's counsel, the court refused to allow Abady to speak. In an opinion and order dated December 10, 1991, the district court held Abady in civil contempt of its June 19, 1991 order compelling discovery. *See Schoenberg v. Shapolsky Publishers*, 140 F.R.D. 282 (S.D.N.Y.1991). Despite the district court's oral reprimand of Mr. Kurland, neither he nor his firm, Snow Becker and Krauss, P.C., were held to be in contempt. Abady, on the other hand, was held in contempt because he "exhibited an intentional and blatant disregard of this [c]ourt's orders.... Even if defendants are at fault, Mr. Abady's conduct still merits sanctions and a finding that he is in contempt of this [c]ourt's order." *Id.* at 287–88. Abady was directed to comply

within 72 hours with the court's prior order compelling discovery. The court also awarded plaintiff attorneys' fees and other expenses incurred in connection with obtaining discovery pursuant to Fed.R.Civ.P. 37 and 28 U.S.C. § 1927. Finally, the court scheduled a hearing to determine an appropriate allocation of sanctions between Abady and defendants. On December 13, 1991, the Publishers decided to replace Abady with new counsel because the court's desire to apportion damages placed defendants at odds with Abady, their former counsel.

On December 16, 1991, Abady moved for a stay of the district court's December 10, 1991 contempt order, contending that because of his termination as counsel and the Publisher's representation to him that all the documents in its possession had been produced, he was powerless to comply with the order. This motion for a stay was denied.

Abady now appeals the final order dated December 10, 1991, finding him in contempt and holding him liable for attorneys' fees and expenses.

## DISCUSSION

### I. *Subject Matter Jurisdiction Over The Underlying Complaint*

■ On appeal, Abady first contends that the district court's order of December 10, 1991, holding him in contempt is void because the court lacked subject matter jurisdiction over the underlying dispute. According to Abady, Schoenberg's cause of action for copyright infringement is merely a contractual dispute disguised as a claim for copyright infringement, and therefore does not present a federal question. In response, Schoenberg maintains that the district court's order was properly based on federal question jurisdiction because he has asserted a cause of action arising under the Copyright Act. Schoenberg claims that defendants breached their licensing agreement with him, and, as a result, that subsequent sales of Schoenberg's work constituted an infringement of his copyright, which is actionable in federal court.

The question of whether the breach of a contract licensing or assigning a copyright gives rise to a federal cause of action under the Copyright Act is a complex issue in a "murky" area. *Berger v. Simon & Schuster*, 631 F.Supp. 915, (S.D.N.Y.1986) (quoting *Keith v. Scruggs*, 507 F.Supp. 968, 970 (S.D.N.Y.1981)). Indeed, it is a problem that continues to perplex and divide the trial courts of this Circuit. *Compare, e.g., Felix Cinematografica, S.R.L. v. Penthouse International, Ltd.*, 671 F.Supp. 313 (S.D.N.Y.1987) (holding that the court lacked jurisdiction because the "essence" of the copyright infringement claim was merely a contract claim); *Berger*, 631 F.Supp. 915 (same); *Stepdesign, Inc. v. Research Media, Inc.*, 442 F.Supp. 32 (S.D.N.Y.1977) (same); *Elan Assoc., Ltd. v. Quackenbush Music, Ltd.*, 339 F.Supp. 461 (S.D.N.Y.1972) (same); *with, e.g., Daniel Wilson Productions, Inc. v. Time–Life Films, Inc.*, 736 F.Supp. 40 (S.D.N.Y.1990) (rejecting the "essence of the claim" test and holding that the court had subject matter jurisdiction because the complaint alleged copyright infringement and requested remedies provided . by the Copyright Act); *CBS Catalogue Partnership v. CBS/Fox Co.*, 668 F.Supp. 282 (S.D.N.Y. 1987) (same); *see also Foxrun Workshop, Ltd. v. Klone Manufacturing, Inc.*, 686 F.Supp. 86 (S.D.N.Y.1988) (rejecting the "essence of the claim" test in determining whether the court had subject matter jurisdiction to hear a suit brought under the Lanham Act for trademark infringement).

Any analysis of whether a federal court has jurisdiction to entertain a copyright claim must begin with an examination of 28 U.S.C. § 1338(a), which provides in pertinent part that,

the district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights.... Such jurisdiction shall be exclusive of the courts of the states in ... copyright cases.

It is well-settled that not every case involving federal copyright laws "arises under" those laws such that federal jurisdiction is proper pursuant to § 1338(a). *See T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir.1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965).

In *T.B. Harms*, we held that the district court lacked subject matter jurisdiction because the claim did not arise under the Copyright Act, but rather was a dispute concerning ownership of the copyright. Appellant Abady argues that *T.B. Harms* is directly on point, and, therefore, the district court lacked jurisdiction. However, in *T.B. Harms* there was no allegation that the defendants had used, or threatened to use, the copyrighted materials. 339 F.2d at 823. Rather, the sole issue in *T.B. Harms* was who owned the copyright. The plaintiff in *T.B. Harms*

did not even raise what has been the problem presented when a defendant licensed to use a copyright or patent on certain terms is alleged to have forfeited the grant; in such cases federal jurisdiction is held to exist if the plaintiff has directed his pleading against the offending use, referring to the license only by way of anticipatory replication, but not if he has sued to set the license aside, seeking recovery for unauthorized use only incidentally or not at all.

*Id.* at 825. By contrast, Schoenberg's complaint poses the much more difficult jurisdictional question anticipated but not decided by this Court in *T.B. Harms*, namely whether a claim asserting infringement as a result of a breach of a contract licensing or assigning a copyright arises under the Copyright Act. Specifically, Schoenberg alleges that the defendants infringed on his copyright by publishing and offering for sale his work subsequent to the Publishers' breach of their licensing contract with him. In *T.B. Harms*, Judge Friendly wrote that, "an action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, *e.g.* a suit for infringement." *T.B. Harms*, 339 F.2d at 828. Because Schoenberg is seeking damages for the alleged infringement as well as an injunction against future infringements, his complaint on its face asserts a claim "arising under" the Copyright Act.

A number of courts in the Southern District have not, however, ended their analy-

sis at this point. For instance, in *Berger,* 631 F.Supp. at 919, Judge Sand, in an oft-cited opinion, looked beyond the complaint in order to determine whether the plaintiff was really concerned with the infringement of his copyright, or, alternatively, was, in fact, more interested in whether he would be allowed to enjoy his property free from the contract claims of the defendant—a concern which is insufficient to raise a claim "arising under" the Copyright Act. *T.B. Harms,* 339 F.2d at 828. Based on his evaluation of the plaintiff's affidavit, Judge Sand concluded that the plaintiff was essentially seeking a declaratory judgment that would free him to publish his work with another publisher on better terms, *Berger,* 631 F.Supp. at 919. Accordingly, under *T.B. Harms,* the claim did not "arise under" the Copyright Act because the plaintiff sued "to set the license aside seeking recovery for unauthorized use *only incidentally* or not at all." *Berger* at 918 (quoting *T.B. Harms,* 339 F.2d at 825) (emphasis added).

While the court in *Berger* was conducting the thorough analysis outlined in *T.B. Harms,* a number of courts in the Southern District unfortunately have relied on *Berger* and *Elan Assoc.,* 339 F.Supp. at 462, for the broader proposition that no claim arises under the Copyright Act whenever an infringement would necessarily result from the breach of a contract that licensed or assigned a copyright. *See, e.g., Felix Cinematografica,* 671 F.Supp. at 315; *Bear Creek Productions, Inc. v. Saleh,* 643 F.Supp. 489, 492 n. 9 (S.D.N.Y.1986). This proposition is, however, at odds with the teachings of this Court in *T.B. Harms. See also Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 230 (2d Cir.1982) (holding that a claim arose under the copyright act because once the contract had expired a defendant who continued to publish the work was liable for infringement).

We believe that the appropriate test under the *T.B. Harms* paradigm, for determining whether a suit "arises under" the Copyright Act when it alleges infringement stemming from a breach of contract, was enunciated in *Costello Publishing Co. v.*

*Rotelle,* 670 F.2d 1035, 1045 (D.C.Cir.1981) (citing 3 Nimmer on Copyright § 10.15 [10–108 to 1110] (1980 ed.)). According to *Costello,* a district court must determine whether the complaint alleges a breach of a condition to, or a covenant of, the contract licensing or assigning the copyright. *Id.* If a breach of a condition is alleged, then the district court has subject matter jurisdiction. *Id.* However, if the complaint merely alleges a breach of a covenant in the agreement licensing or assigning the copyright, then the court must next determine whether the breach is so material that it created a right of rescission in the grantor. *Id.; see also Nolan v. Sam Fox Publishing Co., Inc.,* 499 F.2d 1394 (2d Cir. 1974). If the breach would create a right of rescission, then the asserted claim arises under the Copyright Act. *Id.*

In order to clarify the proper approach to be taken by a district court confronted with a motion to dismiss under analogous circumstances, we instruct courts in this Circuit to undertake a three-part test, which is suggested by *T.B. Harms, Costello,* and *Berger,* to determine whether a complaint states a cause of action arising under the Copyright Act. A district court must first ascertain whether the plaintiff's infringement claim is only "incidental" to the plaintiff's claim seeking a determination of ownership or contractual rights under the copyright. *See T.B. Harms,* 339 F.2d at 825; *Berger,* 631 F.Supp. at 918–19; *see also Vestron, Inc. v. Home Box Office, Inc.,* 839 F.2d 1380, 1382 (9th Cir.1988) (noting that if "affidavits or other materials reveal the infringement claim to be spurious, then the proper avenue is dismissal for failure to state a claim under federal copyright law"). If it is determined that the claim is not merely incidental, then a district court must next determine whether the complaint alleges a breach of a condition to, or a covenant of, the contract licensing or assigning the copyright. *See Costello,* 670 F.2d at 1045. As we noted above, if a breach of a condition is alleged, then the district court has subject matter jurisdiction. *Id.* But if the complaint merely alleges a breach of a contractual covenant in

the agreement that licenses or assigns the copyright, then the court must undertake a third step and analyze whether the breach is so material as to create a right of rescission in the grantor. If the breach would create a right of rescission, then the asserted claim arises under the Copyright Act.

We recognize that in many instances the latter two steps will aid in determining the "essence" of the plaintiff's claim, so that the three parts are, in practice, merged into one. Such was the case in *Lukasewych v. Wells, Rich, Greene, Inc.*, 747 F.Supp. 1089, 1093–94 (S.D.N.Y.1990) (Haight, *J.*), where the court essentially conducted the three-part test outlined here. Applying the reasoning of *Foxrun Workshop*, 686 F.Supp. at 90 (Leval, *J.*), Judge Haight sought to ascertain whether the plaintiff's claim of infringement was merely incidental, whether the alleged breach was a condition or covenant of the licensing agreement, and, because he determined that the breach alleged was of a covenant, whether the breach was so material that it created a right of rescission. Concluding that the case arose out of a dispute over the sufficiency of defendant's payments under the agreement (and, therefore, that the breach was not material), Judge Haight held that subject matter jurisdiction was lacking. *Lukasewych*, 747 F.Supp. at 1094.

In conducting this three-part analysis, a court may refer to evidence outside of the pleadings, such as affidavits. *See, e.g., Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, — U.S. —, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). A hearing limited to the issue of the court's jurisdiction. may also be held. *See, e.g., Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2d Cir. 1981). In the present case, however, the record on appeal is insufficient to allow us to conduct the test outlined herein, and, consequently, we cannot determine whether the district court has subject matter jurisdiction over the underlying dispute in this case. Accordingly, the matter must be remanded to the district court for the court to make the proper jurisdictional inquiry.

It is not necessarily dispositive that Schoenberg's complaint asserts a separate claim for breach of contract, although the district court may view this as evidence that the infringement case is merely incidental. *See Kamakazi Music Corp.*, 684 F.2d at 229–30.

### II. *Subject Matter Jurisdiction Over The Present Appeal*

■ Having found that this Court is unable to decide whether the district court has jurisdiction over the underlying dispute, we must next determine whether we have jurisdiction over the contempt order that is the subject of this appeal. Because we find that the discovery order that gave rise to the contempt sanctions was issued in aid of the district court's determination of its jurisdiction, the court was authorized to find appellant Abady in contempt, and we, therefore, have jurisdiction over this appeal. *See United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79, 108 S.Ct. 2268, 2272, 101 L.Ed.2d 69 (1988). This is so even if the district court should subsequently hold that it lacked jurisdiction over the underlying complaint. *Cf. Willy v. Coastal Corp.*, — U.S. —, ·112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) (holding that the district court had the authority to impose sanctions pursuant to Fed.R.Civ.P. 11 in a case in which it later determined that it lacked subject matter jurisdiction).

In *Catholic Conference*, the plaintiff, Abortion Rights Mobilization, Inc. ("ARM"), sued to revoke the tax-exempt status of the Roman Catholic Church. The Catholic Conference and the National Conference of Bishops (the "Conferences") were dismissed as parties, leaving the Secretary of the Treasury and the Commissioner of Internal Revenue as the sole defendants. ARM served subpoenas on the Conferences after they had been dismissed, seeking extensive documentary evidence to support ARM's claim that the Church had violated the rules governing their tax exempt status by participating in political activities. The Conferences refused to comply, and the district court, pursuant to Fed.

R.Civ.P. 45, found the Conferences to be in civil contempt. The Conferences appealed their civil contempt citation, and, like appellant Abady in the instant suit, claimed that the district court lacked the authority to issue a contempt order because the court lacked subject matter jurisdiction. This Court affirmed the contempt order, holding that the Conferences lacked standing to appeal. *In re United States Catholic Conference*, 824 F.2d 156 (2d Cir.1987). The Supreme Court reversed, and in so doing noted that, "[i]t follows that if a district court does not have subject matter jurisdiction over the underlying action, and the *process was not issued in aid of determining that jurisdiction,* then the process is void and an order of civil contempt based on a refusal to honor it must be reversed." 487 U.S. at 76, 108 S.Ct. at 2270 (emphasis added).

In contrast, the discovery order in the instant case was issued in aid of determining jurisdiction, because plaintiff's discovery request sought to uncover the extent of defendants' breach by determining, for example, whether the covenant pertaining to the defendant's obligation to advertise the work had been fulfilled. The discovery request also sought to uncover instances of infringement after the breach had allegedly occurred. Therefore, given the Court's reasoning in *Catholic Conference,* the district court had the authority to issue its contempt order. Indeed, the Court in *Catholic Conference* concluded that federal courts have an inherent and legitimate authority to issue orders of discovery necessary to determine and rule upon their own jurisdiction. *Id.* at 79, 108 S.Ct. at 2272. Because the district court had the authority to issue the contempt order, we have jurisdiction over appellant Abady's appeal of that order.

## III. *Contempt*

█ Abady contends that the district court adjudicated his contempt without observing the procedural protections constitutionally required for civil contempt proceedings, and in so doing violated his rights under the Due Process Clause. Specifically, Abady claims that he was denied due process because he did not have adequate notice that he was a defendant in the contempt hearing and because he was denied the right to counsel at this hearing.

An order to show cause for contempt and sanctions was issued by the district court on September 26, 1991. This order was directed to defendants, "for the purpose of showing cause why *defendants* should not be held in contempt of court for failing to comply with this Court's discovery order ... and why sanctions should not be imposed on defendants and/or on defendants' counsel pursuant to Rule 11 F.R.Civ.P. or other authority." (emphasis added). While Abady was on notice that he might be sanctioned, he was not on notice that he might be held in contempt. Perhaps even more troubling is the fact that Abady was not represented by counsel at the contempt hearing on October 15, 1991. Paul C. Kurland, a member of Snow Becker Krauss, P.C. appeared for the defendants, because appellant had resigned from this firm two days earlier. No one appeared for appellant Abady, and the district court refused to hear from Abady, who apparently was attempting to represent himself.

One result of the district court's unwillingness to hear from Abady was that he was never given an opportunity to defend himself by proving that the Publishers' document production complied with the district court's discovery order of June 19. At the pre-motion conference held on September 4, 1991, the court did not permit Abady to demonstrate his compliance with its discovery order. Rather, the district court informed Abady that he would have an opportunity to support his contention of compliance at the contempt hearing. Not only was Abady not given an opportunity to speak on this topic, he was not permitted to speak at all.

As this Court made clear in *United States v. City of Yonkers*, 856 F.2d 444, 452 (2d Cir.1988), *rev'd on other grounds*, 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990), "[a] person charged with civil contempt is entitled to notice of the allegations, the right to counsel, and a hearing at which the plaintiff bears the burden of

proof and the defendant has an opportunity to present a defense." *See also Drywall Tapers and Pointers, Local 1974 v. Local 530*, 889 F.2d 389, 394 (2d Cir.1989), *cert. denied*, 494 U.S. 1030, 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990); *Dole Fresh Fruit Co. v. United Banana Co., Inc.*, 821 F.2d 106, 109 (2d Cir.1987). Abady was denied all of these protections. The district court's order of contempt must, therefore, be vacated.

■ Even if due process had been observed, Abady contends that the order of contempt cannot stand because it is no longer within his power to comply. Abady has ceased his representation of the Publishers. He was discharged on December 13, 1991, three days after the district court issued an order finding him in contempt, and was directed by the Publishers to take no further action on their behalf. The Publishers understandably concluded that the court's intention to apportion sanctions created a conflict of interest with their attorney. Contempt sanctions were not to begin to accrue until after December 13, 1991. Abady therefore contends that the imposition of coercive sanctions against him cannot be upheld. We agree.

As we explained in *Badgley v. Santacroce*, 800 F.2d 33, 36–37 (2d Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987), civil contempt is designed to coerce a reluctant party to obey a court's directive. Therefore, civil contempt is appropriate only when "obedience is within the power of the party being coerced by the order," and "[a] classic application of the factual impossibility defense arises when a court orders an individual to produce documents that are not in his possession or control." *Id.* Because Abady is no longer counsel to the Publishers, he cannot comply with the court's discovery order. That is not to say, however, that an attorney can avoid contempt sanctions altogether by getting himself or herself discharged. *See In re Marc Rich & Co., A.G.*, 736 F.2d 864, 866 (2d Cir.1984) ("Individuals unable to comply, because of their own bad faith actions ... may be subject to criminal sanctions, but may not

be held in civil contempt."). Such is not the case here, as Abady was dismissed by his clients because of their legitimate concerns. Therefore, coercive sanctions are inappropriate given the facts of this case.

## IV. *The Propriety of Other Sanctions*

Finally, Abady contends that the district court's award of attorney's fees and costs to plaintiff, pursuant to Fed.R.Civ.P. 37 or 28 U.S.C. § 1927, was improper. Specifically, Abady maintains that: (1) he did not unreasonably multiply the proceedings in this case; and (2) the sanctions were imposed without due process of law. We agree with both contentions.

■ The imposition of sanctions under 28 U.S.C. § 1927 is discretionary and applies to the conduct of an attorney "who ... multiplies the proceedings in any case unreasonably and vexatiously." This Court has determined that to impose § 1927 sanctions, there must be a "finding of bad faith similar to that necessary to invoke the court's inherent power." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). In order to impose sanctions under § 1927, an attorney's actions must be so utterly without justification as to compel the conclusion that these actions were undertaken for an improper purpose. *Id.*

The September 26 order to show cause for contempt and sanctions was issued, in part, for the purpose of determining why counsel should be ordered to pay plaintiff all costs and reasonable attorneys fees incurred in "defending the petition for writ of mandamus." This petition was not undertaken in bad faith; rather, the Publishers and their attorney, appellant Abady, felt obliged to file this petition because of the district court's refusal to entertain their motion to dismiss. In any event, it is improper for a district court to impose sanctions for appeals taken to this Court. *Cheng v. GAF Corp.*, 713 F.2d 886, 891–92 (2d Cir.1983).

Furthermore, we are deeply troubled by the district court's requirement that defendants comply with plaintiff's discovery re-

quest before being permitted to submit their motion to dismiss the complaint for lack of subject matter jurisdiction. As we explained in *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987), "[a]bsent extraordinary circumstances ... a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure." Whenever a court directs a lawyer that he or she may not make a motion, it is in effect cutting the lines of communication between the court and the litigants. This elimination of dialogue can result, as is the case here, in the multiplication of proceedings, especially when a party is seeking to raise a threshold issue. *See Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 99 (2d Cir. 1990).

■ Finally, the court's imposition of sanctions under either 28 U.S.C. § 1927 or Fed.R.Civ.P. 37 violated due process. "Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). While the order to show cause did indicate that Abady might be sanctioned, the district court refused to allow Abady to participate at the October 15 hearing. Because he was not otherwise represented by counsel at the hearing, Abady was denied "an opportunity for a hearing on the record," and accordingly was denied due process. *Id.*

## CONCLUSION

For the foregoing reasons, the district court's order holding Abady in civil contempt and imposing sanctions against him is vacated. On remand the district court shall direct the parties to provide it with the information necessary to conduct the analysis we have outlined, and under this test, to hear the defendants' motion to dismiss the complaint pursuant to Fed.

R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.