### HANNA–BARBERA PRODUCTIONS, INC., Plaintiff,

v.

### SCREEN GEMS–EMI MUSIC INC., Colgems–EMI Music Inc., and Broadcast Music, Inc., Defendants.

### No. 92 Civ. 9253 (MBM).

United States District Court,
S.D. New York.

July 22, 1993.

David Dunn, Davis, Scott, Weber & Edwards, P.C., New York City, for plaintiff.

James E. Daniels, Hall, Dickler, Lawler, Kent & Friedman, New York City, for defendants Screen Gems–EMI Music Inc. and Colgems–EMI Music Inc.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Hanna–Barbera Productions, Inc. sues defendants Screen Gems–EMI Music Inc. and Colgems–EMI Music Inc. (collectively "EMI") and defendant Broadcast Music, Inc. ("BMI") for copyright infringement and violations of state law. EMI moves to dismiss plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, plaintiff has not

satisfied the test for jurisdiction of copyright infringement claims set forth in *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 932–33 (2d Cir.1992), because the theoretical foundation supporting plaintiff's claims is contract law, not copyright law. Accordingly, EMI's motion to dismiss for lack of subject matter jurisdiction is granted.

## I.

The complaint's allegations, which must be taken as true, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), are as follows: from 1957 through 1963, plaintiff created and obtained copyrights in music for certain television cartoons (the "Classic Cartoons"). (Compl. ¶¶ 7–9)[1] EMI concedes that plaintiff owns the copyrights at issue. (Daniels Aff., Ex. 2 ¶ 6) In 1958, plaintiff and Columbia Pictures Corporation agreed that Columbia would collect revenue from the music and share the revenue with plaintiff. (Compl. ¶¶ 11–12, 15) Sometime before April 1967, plaintiff and Columbia modified their agreements to confine Columbia's rights to territories outside the United States and Canada. (*Id.* ¶ 15) Later, pursuant to a 1983 agreement, Columbia's license was terminated. (*Id.* ¶ 21)

EMI asserts that Columbia conveyed its rights to EMI's predecessors in 1976. (Daniels Aff., Ex. 2 ¶ 10) The complaint alleges only that on a date unknown, Columbia's license "was purportedly transferred to the EMI Defendants," and plaintiff alleges that those rights were not properly transferred. (*Id.* ¶¶ 14, 18)

From 1967 through 1992, plaintiff successfully collected copyright revenue, and until 1992 neither Columbia nor EMI asserted any right to the copyrights in the United States or Canada. (*Id.* ¶¶ 16, 19) On October 15, 1992, EMI notified defendant BMI, which had been collecting and distributing the copyright revenue, that EMI claimed a portion of the revenue and asked BMI not to distribute to plaintiff such revenue until EMI's rights were determined. (Daniels

Aff., Ex. 4) Thereafter, BMI did not pay plaintiff. (Compl. ¶ 23) BMI has assumed the role of a stakeholder.

In November 1992 EMI filed a complaint in New York state court, later amended, against plaintiff and related entities, seeking 50% of the revenue already collected by plaintiff from the copyrights. (Daniels Aff, Ex. 2, ¶¶ 14, 19) Plaintiff brought this action on December 23, 1992, and answered EMI's complaint in state court on December 30, 1992, denying EMI's allegations. (*Id.*, Exs. 1, 3)

Plaintiff argues that federal jurisdiction arises from two claims of copyright infringement in the complaint. The first alleges that EMI asserted an exclusive license to the copyrights and "purported to grant to BMI a non-exclusive license authorizing BMI to exploit the copyrights...." (Compl. ¶ 27) The second claim alleges that EMI is "without right, title or interest" with respect to the copyrights. (Compl. ¶ 36)

Much of plaintiff's complaint and argument is based on an October 15, 1992 letter from EMI to BMI. The letter stated that although plaintiff is

> the copyright proprietor of the music embodied in the Hanna–Barbera cartoons ... EMI takes the position that, beginning on July 1, 1976, EMI was entitled to collect, in perpetuity, all of the publisher's share of performance income payable throughout the world with respect to the Hanna–Barbera Music.

(Ex. 4 at 1) EMI attached to the letter a copy of the 1963 license agreement between Hanna–Barbera and Screen Gems and the 1976 agreement between Columbia and EMI's predecessors. The letter requested that BMI place on hold worldwide income from the copyrights, and advised BMI that EMI was claiming all funds then and thereafter attributable to the copyrights in BMI's hands.

Plaintiff claims that the above letter (i) authorized BMI to license public perfor-

---

**1.** The Classic Cartoons include The Flintstones, The Jetsons, Yogi Bear, Huckleberry Hound, Quick Draw McGraw, Loopy de Loop, Magilla Gorilla, Snagglepuss, Touche Turtle, Pixie and

Dixie, Snooper and Blabber, Lippy the Lion, Wally Gator, Punkin Puss, Mush Mouse, Ruff and Ready, and Yakky Doodle. (Compl. ¶ 7)

mance of the music, (ii) asserted that EMI was entitled to administer and exploit the music and receive all income payable, and (iii) threatened to hold BMI liable for any payments. (Pl. Mem. at 7) The complaint alleges:

> 22. In or about October 1992, without justification or basis, the EMI Defendants contacted BMI wrongfully asserting a license with respect to copyrights in the music associated with the Classic Cartoons in the United States and Canada, purporting to grant BMI a non-exclusive license authorizing BMI to exploit copyrights in the music associated with the Classic Cartoons in the United States and Canada and claiming all publisher's royalties derived from the exploitation of the copyrights in the music.

(Compl. ¶ 22)

Plaintiff argues that EMI infringed the copyrights by claiming an entitlement to "administer and otherwise exploit" the music and by threatening BMI. (Pl. Mem. at 8) Plaintiff argues that the letter implies that the authority in BMI to sub-license, and to collect and distribute royalty fees with respect to the music is under EMI's authority, not plaintiff's. Plaintiff cites the general principle that authorization of infringing use alone is sufficient to confer subject matter jurisdiction. *See, e.g., Peter Starr Production Co. v. Twin Continental Films, Inc.,* 783 F.2d 1440, 1443 (9th Cir.1986).

Finally, plaintiff argues that its grant of a license to BMI is analogous to a compulsory license, and therefore BMI's failure to pay royalties after receiving EMI's demand and threat constitutes copyright infringement by EMI. *See Essex Music Inc. v. ABKCO Music and Record, Inc.,* 743 F.Supp. 237, 242 (S.D.N.Y.1990).

Plaintiffs argue that the complaint makes no claim for breach of contract with respect to the domestic exploitation of the copyrights at issue. (Pl. Mem. at 10) Plaintiff argues alternatively that no contract existed between plaintiff and EMI, because Columbia relinquished domestic contract rights before 1976, when EMI succeeded to Columbia's contract rights, and that in any event those rights were not transferable. (*Id.*)

## II.

The district courts have original and exclusive jurisdiction of any civil action "arising under" the Copyright Act. 28 U.S.C. § 1338(a). A claim involving only the ownership of a copyright or for breach of an agreement relating to a copyright does not "arise under" the Copyright Act, and, therefore, federal jurisdiction does not attach to such a claim. *See T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965); *Berger v. Simon & Schuster,* 631 F.Supp. 915 (S.D.N.Y.1986); *Rotardier v. Entertainment Co. Music Group,* 518 F.Supp. 919 (S.D.N.Y.1981). Rather, courts have held that the "gist," "essence," or "principal issue" must be the copyright determination. *Topolos v. Caldewey,* 698 F.2d 991 (9th Cir.1983); *Franklin v. Cannon Films, Inc.,* 654 F.Supp. 133 (C.D.Cal.1987). The mere fact that non-copyright issues, such as contract issues, are relevant does not deprive the district court of jurisdiction. *Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228 (2d Cir.1982); *Vestron, Inc. v. Home Box Office, Inc.,* 839 F.2d 1380 (9th Cir.1988).

The question presented here is not a new one: does the breach of a contract licensing or assigning a copyright give rise to a federal cause of action under the Copyright Act? Courts usually begin the analysis of such a question with the following quotation from Judge Friendly's opinion in *T.B. Harms, supra:*

> An action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement ... or asserts a claim requiring construction of the Act, ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test.

*T.B. Harms Co.,* 339 F.2d at 828 (citations omitted).

Courts in this District have disagreed about how to apply Judge Friendly's test: some emphasize that the manner in which plaintiff frames the complaint is paramount, *see, e.g., Foxrun Workshop, Ltd. v. Klone Manufacturing, Inc.,* 686 F.Supp. 86, 90 (S.D.N.Y.1988), while others look behind the allegations to assess whether the complaint is premised on breach of contract claims rather than copyright claims, *see, e.g., Berger v. Simon & Schuster,* 631 F.Supp. at 917; *see also Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 931–33 (2d Cir.1992) (citing and comparing various district court decisions).

In *Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d at 932, the Second Circuit recognized that the above jurisdictional questions are "murky" and sought clarity by requiring the district courts to undertake the following three-part analysis to determine whether a complaint states a cause of action under the Copyright Act:

First, the court must ascertain whether the plaintiff's infringement claim is only "incidental" to the plaintiff's claim seeking a determination of ownership or contractual rights under the copyright. If the court finds that the infringement claim is only "incidental," there is no subject matter jurisdiction.

Second, if the court finds that the infringement claim is not "incidental," the court must determine whether the complaint alleges a breach of condition to, or a covenant of, the contract licensing or assigning the copyright. If a breach of condition is alleged, there is subject matter jurisdiction; if a breach of covenant is alleged, there may not be.

Third, if the complaint alleges merely a breach of a contractual covenant in the agreement that licenses or assigns the copyright, the court must analyze whether the breach is so material as to create a right of rescission in the grantor. If the breach would create such a right, there is jurisdiction; if not, there isn't. *Id.*

■ To conduct this three-part analysis, a court may refer to evidence outside the pleadings, such as affidavits. *Schoenberg,* 971 F.2d at 932 (citing *Antares Aircraft, L.P.*

*v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* —— U.S. ——, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992)). It is not dispositive that the complaint asserts a separate claim for breach of contract, although the court may view such a claim as evidence that the infringement case is merely incidental. *Schoenberg,* 971 F.2d at 933 (citing *Kamakazi Music Corp.,* 684 F.2d at 229–30).

### III.

■ Although no district court has yet applied the three-part analysis formulated in *Schoenberg,* Judge Haight conducted essentially the same inquiry in *Lukasewych v. Wells, Rich, Greene, Inc.,* 747 F.Supp. 1089, 1092–94 (S.D.N.Y.1990), and concluded that:

> The point remains that the initial and primary role of the trial court faced with this case will be to interpret a contract and that no copyright issues will remain after this interpretation has been made.

*Lukasewych,* 747 F.Supp. at 1094 (quoting *Berger,* 631 F.Supp. at 917–18). That conclusion applies equally here. For the reasons stated below, plaintiff has failed to establish jurisdiction under any of the three parts of the *Schoenberg* test.

### A.

First, plaintiff's infringement claim is only "incidental" to the claim seeking a determination of ownership or contractual rights under the copyright. The crucial question here is whether the rights at issue were transferred by Hanna–Barbera through Columbia to EMI. EMI claims, here and in state court, that it acquired worldwide rights to revenue from the music copyrights; Hanna–Barbera claims that the transfer of rights to EMI was improper.

These are issues of contract interpretation for the state court. In other words, this suit depends on interpretation of the applicable contracts, not on a construction of the Copyright Act. In addition, contract issues do not become copyright issues merely because plaintiff alleges that no contract between the parties existed; whether a contract existed

also is a question of New York contract law. *Schoenberg,* 971 F.2d at 932.

Moreover, plaintiff cannot allege federal copyright infringement merely by pleading the words "copyright infringement." Plaintiff argues that federal jurisdiction exists because it "did not mention breach of contract as a theory of liability." *See Kamakazi Music,* 684 F.2d at 229. However, plaintiff must do more than choose its words—"copyright infringement" instead of "breach of contract"—carefully; plaintiff must plead facts to support a claim for copyright infringement. Such a federal claim requires not merely words, but substance, and plaintiff has not identified EMI's infringing use, nor a threat of such use. EMI's demand for money from BMI is neither.

In addition, plaintiff's claim is based in significant part on an inaccurate reading of EMI's October 15, 1992 letter to BMI. (Ex. 4) Plaintiff alleges that that letter "purported to grant to BMI a non-exclusive license authorizing BMI to exploit the copyrights." (Compl. ¶ 27) Under any fair reading, the letter said no such thing. The letter simply informed BMI of EMI's claim to royalties and asked BMI not to distribute income until the dispute was resolved. (Ex. 4) In fact, according to the complaint, it was *plaintiff* who already had granted to BMI a nonexclusive right to exploit the copyrights. (Compl. ¶ 41) In addition, the letter did not authorize an infringing use. *See Peter Starr, supra.*

In sum, plaintiff seeks a declaration that EMI acquired no rights to revenue generated by the music. Because plaintiff's core claim is for breach of contract, and only incidentally for copyright infringement, the complaint must be *dismissed for lack of subject matter jurisdiction. Schoenberg,* 971 F.2d at 932.

## B.

■ Second, even if plaintiff's federal claim is not merely "incidental" to its state claims, plaintiff has not satisfied the second requirement of *Schoenberg,* because plaintiff does not allege that EMI breached a condition to a contract, rather than a covenant. A condition is any fact or event which qualifies

a duty to perform. *See Costello Publishing Co. v. Rotelle,* 670 F.2d 1035, 1045 n. 15 (D.C.Cir.1981) (citing Corbin, Conditions in the Law of Contract, 28 Yale L.J. 739 (1919)). Plaintiff does not allege that EMI failed to satisfy a condition to any agreement at issue; rather, plaintiff disputes the existence of an agreement with EMI, and claims, alternatively, that if an agreement existed, EMI breached that agreement. At most, plaintiff claims that EMI breached a covenant of the contract. *Id.*

■ The parties do not discuss the second requirement of *Schoenberg.* Instead, plaintiff argues that jurisdiction exists because EMI failed to assert its alleged rights for several years after obtaining them, and thus became a "stranger" to plaintiff. (Pl. Mem. at 12) Plaintiff is correct that a claim alleging infringement arises under the copyright laws when the copyright owner and the alleged infringer are "complete strangers" who have never dealt with each other. *See Marshall v. New Kids on the Block Partnership,* 780 F.Supp. 1005, 1008 (S.D.N.Y.1991). However, when the owner and infringer "are not complete strangers, but rather are parties to a copyright license agreement," the question is more difficult. *Id.* The Court in *New Kids* noted that although a copyright licensee can make itself a "stranger" to the licensor by exceeding the duration or scope of the license, if the licensor seeks relief directly under the agreement, "the claim is merely a state law contract claim and there is no federal jurisdiction." *New Kids,* 780 F.Supp. at 1008–09.

In this case, there is no claim that EMI made itself a "stranger" by exceeding the duration or scope of a license. Moreover, although plaintiff disputes whether EMI properly succeeded to Columbia's rights, plaintiff does not claim that the parties are "complete strangers." *New Kids,* 780 F.Supp. at 1008.

## C.

Third, EMI's alleged breach is not "so material as to create a right of rescission in the grantor." *Schoenberg,* 971 F.2d at 933; *see also Lukasewych, supra.* EMI simply

wrote a letter to BMI asserting its claim to profits from the copyrights at issue. If it turns out that EMI does not have a valid agreement with plaintiff, then EMI may not receive profits from the copyrights. On the other hand, if EMI has a valid agreement, then it may receive profits. These are issues for the state court to decide, but in either case, EMI's actions to assert its claim, including writing the letter to BMI, were not a material breach of contract which gave plaintiff a right of rescission.

## IV.

Plaintiff also asserts subject matter jurisdiction for its second claim, which it argues will require the application of federal copyright law. (Pl. Mem. at 13) In its second claim, plaintiff alleges that it and Columbia agreed before 1967 that their license would not cover the United States and Canada. (Compl. ¶ 15) Plaintiff alleges that for at least 23 years neither Columbia nor EMI asserted any right to exploit or administer the copyrights. Plaintiff alleges that the agreements between Hanna–Barbera and Columbia "specifically provide that Columbia could not assign its rights with respect to the Classic Cartoons, except to an entity that acquired substantially all of Columbia's assets or with which Columbia merged." (Compl. ¶ 14) In other words, plaintiff's second claim alleges that Columbia did not have a license to obtain the revenue at issue, and could not have assigned a license to EMI's predecessors even if it had one.

The second cause of action does not provide a basis for jurisdiction for the same reasons stated above: it requires an interpretation of contract terms, not the meaning of copyright law. Accordingly, any claim of copyright infringement is merely "incidental" to the underlying contract dispute. *See Schoenberg, supra.*

Moreover, plaintiff cannot suggest that its claims will require interpretation of the Copyright Act of 1909 and that law's prohibition of unauthorized transfers of a licensee's rights. If plaintiff authorized such transfers, the 1909 Act would not prohibit them; if plaintiff did not authorize such transfers, the 1909 Act would not affect a determination

that EMI did not acquire Columbia's rights. *See Harris v. Emus Records Corp.,* 734 F.2d 1329, 1333 (9th Cir.1984). Again, in either case, the determination depends on state contract law, not federal copyright law.

\* \* \*

The initial and primary role of the court faced with this case—presumably, the New York Supreme Court where EMI already has filed a complaint—will be to interpret the contracts at issue. After such interpretation has been made, no copyright issues will remain. *See Berger,* 631 F.Supp. at 917–18.

For the reasons stated above, this Court does not have jurisdiction over plaintiff's federal claims. Therefore, defendant's motion to dismiss for lack of subject matter jurisdiction is granted, and the federal claims are dismissed.

The Supreme Court has held that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also Block v. First Blood Assocs.,* 988 F.2d 344, 351 (2d Cir.1993). Consequently, the state law claims also must be dismissed.

SO ORDERED: