**SCANDINAVIAN SATELLITE SYSTEM, AS, Plaintiff,**

v.

**PRIME TV LIMITED,**
**et al., Defendants.**

**No. 1: 00–CV02482 (ESH).**

United States District Court,
District of Columbia.

May 16, 2001.

Gary Clifford Tepper, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Plaintiff.

Michael J.E. Dixon, Dilworth Paxson, P.L.L.C., Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

HUVELLE, District Judge.

### INTRODUCTION

Before this Court is a case brought by plaintiff Scandinavian Satellite System AS ("SSS"), a Norwegian corporation that is controlled by Raja Nasir Hussain, a Pakistani citizen who resides in England. The defendants are Prime TV ("Prime"), a company organized under the laws of the United Kingdom, and two Pakistani individuals—Yusaf Baig Mirza, who controls Prime, and Abdul Jabbar, the chairman of Prime. Plaintiff sues these parties for copyright infringement under 17 U.S.C. §§ 106 and 602. At issue are the broadcast rights for television programs produced by Pakistan Television Corporation Limited ("PTV"), a government-owned enterprise based in Pakistan that produces news and entertainment programs ("PTV Programming").

While defendants have raised a host of legal issues, the Court need not address them, since it concludes that this is not a "civil action arising under an Act of Congress relating to ... copyrights." 28 U.S.C. § 1338(a). Thus, there is no subject matter jurisdiction and the case must be dismissed.

## FACTUAL BACKGROUND

The events, contracts, and parties that give rise to this action form a tangled web. While denominated as a copyright action, this case really involves three contracts signed by four interrelated foreign entities. As will become clear, plaintiff bases its action on two of the contracts, claiming that those agreements are valid, and it seeks to rescind the third contract as void on the grounds of duress. Plaintiff has not sued any of the signatories to the first two contracts, but instead has sued an entity that, prior to the signing of the third contract, was plaintiff's wholly-owned subsidiary. Moreover, all of the parties and all of the signatories to the contracts are foreign citizens, and all events relevant to both the formation and the alleged breach of these contracts occurred outside the United States. Nonetheless, by invoking the copyright laws, plaintiff has brought a claim that, on its face, may be cognizable in federal court.

Before the Court can evaluate the validity of plaintiff's copyright claim, it is necessary to more fully identify the cast of characters and the three contracts which are at the core of this action.

## I. The Cast of Characters

### A. The Corporate Entities

This dispute involves the rights to broadcast PTV Programming outside of Pakistan. PTV is an enterprise headquartered in Pakistan that produces news and entertainment programs. The government of Pakistan owns PTV. (Complaint ¶ 8.) PTV Programming is authored, produced, published, and first shown in Pakistan. It is neither first published nor simultaneously published in the United States. (Complaint ¶ 9.)

Plaintiff SSS is a Norwegian company. According to plaintiff, SSS holds an exclusive license to broadcast PTV Programming outside of Pakistan. Hussain, a citizen of Pakistan, is the president of SSS. (Complaint ¶ 14.)

Though not a party to the action, Sports Star International ("SSI") is a Pakistani company that is a central player in this drama. SSI also has an interest in the broadcasting rights to PTV Programming. In fact, defendants argue that SSI, rather than SSS, holds the exclusive rights to broadcast PTV Programming outside of Pakistan.

Defendant Prime is a British company that was a wholly-owned subsidiary of SSS prior to the events giving rise to this action. SSS states that it had intended for Prime, as its subsidiary, to broadcast PTV Programming outside of Pakistan. (Complaint ¶ 13.) However, as a result of the execution of a Joint Venture Agreement, the controlling interest in Prime was transferred from SSS to SSI.

### B. The Individual Defendants

There are two individual defendants in this action, neither of whom has been served as of this time. Defendant Mirza is a citizen of Pakistan. According to plaintiff, Mirza has a variety of overlapping roles in these events. Plaintiff asserts that Mirza (1) is the managing director of PTV; (2) holds an interest in SSI; and (3) now controls the actions of Prime. (Com-

plaint ¶¶ 3, 11, 14.)[1]

Defendant Jabbar is also a citizen of Pakistan. Plaintiff contends that Jabbar is the chairman of Prime, and that he also controls the actions of Prime. It is unclear from the record whether Jabbar has an interest in either PTV or SSI.

## II. The PTV Programming Agreements

The rights to broadcast PTV Programming rest on the interpretation of a series of three contracts. First, PTV granted SSI an exclusive license to broadcast PTV Programming outside of Pakistan in an agreement dated May 25, 1998 (the "SSI/PTV Agreement"). In consideration for these rights, SSI paid PTV a cash deposit of $25,000. (Decl. of M. Taher Memon ("Memon Decl."), Ex. 1, ¶ 8.) This contract includes a forum selection clause referring all disputes to arbitration in Pakistan.[2] The parties do not dispute the validity of this contract. However, SSS argues that it is the intended beneficiary of the SSI/PTV Agreement. SSS alleges that it structured and brought the idea for the contract to PTV, and that SSS participated in the bidding process using SSI as its

agent and representative. SSS also asserts that it paid the $25,000 in consideration for the license. (Complaint ¶ 12.)

SSI, in turn, granted SSS the exclusive rights to broadcast PTV Programming outside of Pakistan in a second agreement dated July 1, 1998 (the "SSS/SSI License Agreement"). Like the first contract, this agreement also includes a forum selection clause referring disputes arising under the contract to arbitration in Pakistan.[3] Though it is ultimately not relevant to the Court's determination as to subject matter jurisdiction, the parties disagree about the continued validity of the SSS/SSI License Agreement.[4]

Subsequent to entering into the SSS/SSI Agreement, Hussain, on behalf of SSS, signed a third contract—the Joint Venture Agreement (the "SSS/SSI Joint Venture Agreement") on February 17, 1999. The SSS/SSI Joint Venture Agreement had two significant consequences. First, it authorized SSI to assume a controlling position in Prime, which had previously been a wholly owned subsidiary of SSS. (Complaint ¶¶ 13–14; Memon Decl., Ex. 3,

1. In a declaration attached to defendant's motion to dismiss, Mirza confirms that he is managing director of PTV but denies all other allegations. (Declaration of Yusaf Baig Mirza ("Mirza Decl.") ¶ 1.)

2. "In the event or [sic ] any dispute, the parties to the contract may appoint an arbitrator with mutual consent, whose decision would be binding on both. Should the dispute if any, remain unresolved, the case may be referred to a court of law, at Islamabad." (Memon Decl., Ex. 1, ¶ 18.)

3. "All disputes in respect of this agreement shall be settled amicably. However, any dispute not so resolved shall be referred for arbitration to two arbitrators, one each to be nominated by each party. In case of disagreement between the arbitrators, the dispute shall be referred to an umpire to be nominated by the arbitrators. The arbitration shall take place at Lahore under the provi-

sions of Arbitration Act, 1940." (Memon Decl., Ex. 2, at 2.)

4. On May 4, 2000, according to defendants, SSI terminated the contract pursuant to a clause giving either party the right of cancellation with "at least three months advance notice in writing to the other party." (Memon Decl., Ex. 2, ¶ 12.) According to defendants, the contract was terminated and plaintiff has no claim to the broadcast rights for PTV. Plaintiff disputes this, arguing that SSI never sent a notice of termination to SSS. Therefore, plaintiff asserts, the SSS/SSI License Agreement remains in effect. Moreover, plaintiff contends that SSI and PTV both assured SSS that the termination provision of the SSS/SSI License Agreement would be exercised only if the SSI/PTV Agreement were terminated.

¶ 2.2.) Second, the Joint Venture Agreement transferred the exclusive license to broadcast PTV from SSS to Prime, as controlled by SSI. (Memon Decl., Ex. 3, ¶ 1.3.) Like the other two contracts, the SSS/SSI Joint Venture Agreement contains a forum selection clause, as well as a choice of law provision.[5]

Despite plaintiff's protestations to the contrary, the validity of the Joint Venture Agreement is at the core of this action. SSS argues that the contract is null and void, because it was forced to sign the agreement under duress. Plaintiff contends that SSI and Mirza threatened harm to Hussain and his family if SSS did not enter into the Joint Venture Agreement. (Complaint ¶ 16.) SSS alleges that Hussain was not permitted to read the Agreement before signing it, and that he was not even able to obtain a copy until many months later. SSS also claims that neither it nor Hussain received any consideration for entering into this agreement. (Complaint ¶ 15.)

The necessity of determining whether the Joint Venture Agreement was executed under duress—and, as a result, whether it is null and void—essentially preempts SSS' copyright claim. If the contract is found to be valid, then SSS has no rights to broadcast PTV Programming, and it cannot assert any copyright action. If the agreement is voided, SSS maintains the rights to the PTV Programming—but also retains its controlling interest as the sole shareholder in Prime. So while SSS would own the copyright license (assuming that the License Agreement was not terminated), the defendants in this action would be (1) a wholly-owned subsidiary of SSS, and (2) two individuals who would have no control over that subsidiary. As explained below, this unique posture means that this action does not "arise under" the federal copyright laws, but amounts to nothing more than a straightforward contract action for rescission of the Joint Venture Agreement.

### III. Defendants' Activities in the United States

As noted, plaintiff is a Norwegian company, and it has sued a British corporation and two citizens of Pakistan based on three contracts executed in Pakistan and containing forum selection clauses mandating arbitration in that country. Yet this suit is denominated as a copyright action because SSS alleges that Prime, through its agent Kelly Broadcasting Systems ("Kelly"), has advertised in the United States and will air or broadcast PTV Programming in the United States. SSS contends that it is has the exclusive rights to PTV Programming in the United States, and that it has not authorized Prime to broadcast PTV Programming there. Kelly is a New Jersey corporation that licenses and distributes international television programming through direct-to-home and direct broadcast service in the United States. In spring 2000, Kelly became a

5. "If any question or difference whatsoever shall arise between the Parties hereto, in respect of this Agreement or any Articles, clauses or anything herein contained or the construction hereof or as to any matter in any way connected therewith or arising therefrom then, and in such cases, the matter in dispute shall be referred to Arbitration in Pakistan under the rules of the Conciliation and Arbitration of the International Chambers of Commerce by one or more Arbitrators appointed mutually by the parties in dispute in accordance with said rules. Such arbitration shall be held at Karachi. The Parties hereto consent to the Court of competent jurisdiction at Karachi for enforcement of the arbitrator's decision." (Memon Decl., Ex. 3, ¶ 20.1.) In addition, the contract provides that it "be construed according to and governed by the laws of the Islamic Republic of Pakistan." *Id.* ¶ 20.2.

subsidiary of EchoStar Communications Corporation. At some time subsequent to the signing of the SSS/SSI Joint Venture Agreement, Kelly and PTV—with the consent of SSI—reached an agreement to telecast PTV Programming in the United States through Prime (the "Kelly Agreement").[6]

According to SSS, Prime—through Kelly and Echostar—has advertised in the District of Columbia and elsewhere in the United States that it will air and broadcast PTV Programming in those locations. Plaintiff provides several examples in support of this argument. First, SSS alleges that Kelly's web page currently advertises PTV Programming. Second, plaintiff contends that Prime is importing into the United States, without the authority of SSS, copies of PTV Programming that Prime acquired outside this country in order to broadcast PTV Programming in the United States for profit. Third, SSS argues that Prime must have shown samples of PTV Programming—in violation of plaintiff's copyright—to Kelly in negotiating the agreement.

In August 2000, SSS sent a demand letter to defendants to obtain assurances that Prime would not broadcast PTV broadcasting in the United States. In their reply, defendants' counsel refused to provide these assurances. Plaintiff argues that because of defendants' actions, it has been unable to profit from its rights under the SSS/SSI License Agreement, and has been unable to reach an agreement with a satellite company to broadcast PTV Programming in the United States.

6. It is unclear when this agreement was reached. As plaintiff notes, defendants provide two separate dates for the signing of the Kelly Agreement-either October 30, 2000 (Memon Decl. ¶ 14) or May 30, 1999 (Memon Decl. Ex. 6, ¶ 4).

## IV. Litigation in Pakistan

On September 7, 2000, PTV—which is the undisputed originator and ultimate licensor of the programming—commenced an action in Lahore, Pakistan against SSS and Hussain seeking a declaration that SSS and Hussain have no rights to PTV Programming in America, no right to interfere in an agreement between PTV and Kelly to broadcast PTV Programming in the United States, and no direct grievance against PTV. In addition, PTV sought a permanent injunction against SSS and Hussain prohibiting them from a) raising any claim based on the SSS/SSI License Agreement, b) seeking recourse against PTV in any United States District Court, c) broadcasting any PTV Programming in the United States, and d) taking any action that may result in the interruption or suspension of PTV Programming in the United States.

The Pakistani court exercised jurisdiction over the action, and on September 7, 2000, it issued a preliminary injunction prohibiting SSS from interfering with PTV broadcasting in the United States. (*See* Declaration of Yusaf Baig Mirza, Ex. 2.) The Pakistani lawsuit is still pending, and any decision there will inevitably determine the parties' rights under the contracts. Plaintiff, however, argues that the Pakistani litigation cannot bind it, because it has yet to be served with process in that suit. In addition, plaintiff contends that it cannot meaningfully participate in any litigation in Pakistan because of the threats of violence against Hussain should he enter that country.[7]

7. A second action has also been commenced in Pakistan against SSS and Hussain by SSI and Jabbar. SSI and Jabbar seek monetary damages from SSS and its principal for breach of the parties' agreements, alleging that SSS has failed to pay more than $2.2 million owed to them under the SSS/SSI Li-

## V. Litigation in the United States

Shortly after the Pakistani court issued its preliminary injunction, plaintiff SSS filed its complaint in this Court on October 16, 2000. Plaintiff subsequently filed an amended complaint on January 4, 2001. As a result of this suit, Kelly has indefinitely postponed the broadcast of PTV Programming in the United States. (Mirza Decl. ¶ 4; Memon Decl. ¶¶ 14–16.)

All defendants responded jointly to the initial complaint by filing a motion to dismiss on November 29, 2000. Defendants moved to dismiss on three grounds: lack of personal jurisdiction, international comity, and the existence of a forum selection clause in the contracts that are at the core of this action. In its reply, defendants also suggested that this action be stayed pending resolution of the lawsuit in Pakistan.

Defendants' arguments in support of their motion to dismiss underscore the fact that this case involves a determination of the rights of foreign entities under three contracts governed by the law of Pakistan and containing forum selection clauses referring disputes to arbitrators in that country. Defendants argue that this Court lacks personal jurisdiction over them because their "conduct and connection with the forum state [is] such that [they could not] reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). They contend that the individual defendants are not subject to personal jurisdiction for the additional reason that all of their actions relating to the United States were taken on behalf of Prime, and that they are therefore protected from liability under the "fiduciary shield" doctrine. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 901 (2d Cir.1981). In addition,

defendants argue that the Court should dismiss—or at least stay—this action based on the doctrine of international comity—"the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another...." *Hilton v. Guyot,* 159 U.S. 113, 143, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Because the contracts involve Pakistani parties and depend on Pakistani law, defendants contend that this Court should defer to the interpretation of those agreements by that nation's court in the pending lawsuits. Finally, defendants assert that the forum-selection clauses in all three contracts should be enforced, requiring plaintiff's claims to be determined by an arbitrator in Pakistan under Pakistani law.

By styling the action as a copyright suit, plaintiff has skillfully circumvented these arguments. First, it argues that personal jurisdiction exists over the defendants pursuant to the District of Columbia's long-arm statute, because the defendants, acting through Kelly, agreed to broadcast the copyrighted PTV Programming in the District and therefore "transact[ed] business" under D.C.Code § 11–423(a). Plaintiff contends that an infringement case may be brought in any jurisdiction in which a defendant has agreed to publish the copyrighted article. *E.g. Editorial Musical Latino Americana, S.A. v. Mar International Records, Inc.,* 829 F.Supp. 62, 64 (S.D.N.Y.1993). In addition, plaintiff cites a minority line of cases which hold that the fiduciary shield doctrine does not protect corporate officers and directors where jurisdiction is predicated on the transacting business test. *Chase v. Pan–Pacific Broadcasting,* 617 F.Supp. 1414, 1422–23 (D.D.C.1985). Failing that, plaintiff argues that it should be afforded discovery to determine the extent of the individual

---

cense Agreement. (Memon Decl. ¶ 10–11.) As with the other Pakistani action, SSS as-

serts that it has not been served with process in this suit.

defendants' contacts with the District of Columbia. Plaintiff also skirts defendants' other arguments for dismissal by essentially ignoring the Joint Venture Agreement and by asserting its rights under the SSS/SSI License Agreement. Plaintiff argues that because the Joint Venture Agreement was coerced under threats of death, it is void and unenforceable. Therefore, the forum selection clause in that contract is also null and void. In addition, plaintiff contends that the doctrine of comity is inapplicable because Hussain has been threatened with death should he re-enter Pakistan. In light of that, he argues that he cannot possibly receive a fair hearing in a Pakistani court, and that a United States court should therefore not defer to the outcome of the litigation in Pakistan. Also, plaintiff reiterates that its case is solely for copyright infringement, which in plaintiff's view means that it is separate and distinct from the contract action in Pakistan, since a Pakistani court cannot adjudicate a United States copyright claim.

Finally, plaintiff evades the forum selection clause in the License Agreement by arguing that it has not sued any signatory to that Agreement and defendants therefore cannot avail themselves of that clause.

After reviewing the motion to dismiss and the related law, the Court asked for memoranda relating to 1) whether the case should be transferred to the United States District Court for the District of New Jersey;[8] 2) whether the Court has subject matter jurisdiction over the action as a matter arising under the federal copyright laws; and 3) whether SSI, which is a party to all of the contracts at issue in the case, is a necessary and indispensable party to the action under Rule 19 of the Federal Rules of Civil Procedure.[9] Both parties responded in writing to these questions.

■ However, subject matter jurisdiction is the only issue that need be addressed, for if this action does not "arise under" the federal copyright laws, this Court has no jurisdiction.[10] Having re-

8. Plaintiff had alluded to this as a possibility in its memorandum, since it acknowledged that whatever domestic activities it was aware of had occurred in New Jersey. (Plaintiff's Memorandum in Opposition to Defendants' Motion To Dismiss at 23.) Nonetheless, plaintiff ultimately opposed transfer, arguing that its choice of forum was entitled to deference and that neither private nor public interest factors favored New Jersey over the District of Columbia.

9. Plaintiff contends that SSI is neither a necessary nor an indispensable party to this action. Plaintiff argues that SSI is not a necessary party because 1) complete relief can be accorded in its absence since "the only issue presented in Plaintiff's Complaint is that of Defendants' unlawful copying" (Plaintiff's Memorandum Addressing Questions Posed by the Court, at 6–7), and 2) disposition of the action will not impair SSI's ability to protect its own interests. Plaintiff makes these arguments in spite of the fact that any ruling on the infringement claim would require a preliminary determination of rights under three contracts—all of which were signed by SSI.

Plaintiff also contends that SSI is not an indispensable party primarily because neither SSI nor defendants would be prejudiced by a judgment rendered in SSI's absence. Here again, plaintiff's rationale is that defendants' infringement is the only issue in this case. This argument is disingenuous. Any finding of infringement by Prime would necessarily entail a determination that 1) SSS, and not SSI, owns the copyright under the SSS/SSI License Agreement, 2) the Joint Venture Agreement signed by SSI is null and void, and therefore 3) SSS, and not SSI, is the controlling owner of Prime. In other words, to determine the "only legal claim" in this case—copyright infringement—the Court would first have to rule on SSI's rights under three contracts. As part of this, the Court would have to determine whether SSI or SSS owns Prime, as well as which of these entities owns the rights to the PTV Programming.

10. There is no diversity jurisdiction over an action in which all parties are citizens of foreign states. 28 U.S.C. § 1332(a).

viewed the pleadings and the record contained therein, as well as the parties' supplemental responses to the Court's inquiries, the Court finds that it lacks subject matter jurisdiction over the action, and therefore it dismisses the case.

## LEGAL ANALYSIS

In addressing the issue of subject matter jurisdiction under the Copyright Act, the Court finds solace in the leading authority on copyright law—*Nimmer on Copyright*—which recognizes that whether a complaint which asserts both copyright and contract claims "arises under" copyright laws "poses among the knottiest procedural questions in copyright jurisprudence." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[A], at 12–4 (1999). Nonetheless, plaintiff's complaint leaves the Court no choice but to immerse itself in the intricacies of subject matter jurisdiction under the copyright laws, since "[i]t is well established that not every complaint that refers to the Copyright Act 'arises under' that law for purposes of Section 1338(a)." *Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 347 (2d Cir.2000). Obviously, other than the Copyright Act, plaintiff has no basis to be before this Court, for without this vehicle, plaintiff would be confronted by the insurmountable obstacles presented by a lack of diversity between the parties (*see supra* note 10), the choice of forum clauses in the three contracts, jurisdictional problems involving all of the entities and individuals involved in the relevant events, potentially conflicting rulings of foreign courts, and the nonamenability to suit of a potential indispensable party (SSI).

■ The traditional rule regarding whether a suit "arises under" the federal copyright laws for purposes of § 1338(a) is that " 'the federal grant of a . . . copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law.' " *Id.* (citing *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 826 (2d Cir.1964)). That is, where the primary purpose of the complaint is to secure the interpretation of a copyright's ownership rights under a contract, and the infringement claim is secondary to this determination, courts have often held that the case does not arise under the federal copyright laws, thereby stripping a federal court of subject matter jurisdiction under § 1338(a). *Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926 (2d Cir.1992); *Muse v. Mellin,* 212 F.Supp. 315, 318 (S.D.N.Y.1962); *Cresci v. Music Publishers Holding Corp.,* 210 F.Supp. 253, 256 (S.D.N.Y.1962).

The recent trend, however, has been to broaden the definition of "arising under," thereby expanding the jurisdiction of the federal courts to include suits for copyright infringement even where rights under a contract must be determined preliminarily. *Bassett* is the leading example of this trend. There, plaintiff Debra Bassett entered into an agreement with defendant Mashantucket Pequot Tribe to develop and produce a film about the 1636–38 Pequot War. Bassett then wrote a script for the film, which she copyrighted and delivered to the Tribe. Soon after that, the Tribe terminated the agreement, asserting that Bassett had breached the contract. Nonetheless, the Tribe continued to develop and produce the film. Bassett then sued for copyright infringement, alleging that the Tribe had used her script without consent or license.[11] The Tribe moved to dismiss

---

11. Bassett also alleged several claims under state law, including breach of contract and a variety of torts. *Bassett,* 204 F.3d at 346.

for lack of subject matter jurisdiction, arguing that the copyright infringement claim was incidental to her contract claims, and therefore did not "arise under" federal law. *Bassett*, 204 F.3d at 345–46.

The district court agreed and dismissed on these grounds, but the Court of Appeals for the Second Circuit reversed, holding that the lower court did have subject matter jurisdiction over the action. "[F]or claims of infringement arising from, or in the context of, an alleged contractual breach ... [w]hen a complaint alleges a claim, or seeks a remedy provided by the Copyright Act, federal jurisdiction is properly invoked." *Id.* at 355.[12]

The issue here is whether *Bassett* applies to this case, and apparently both parties assume that it does. Plaintiff writes that

[t]he Complaint does not present any contractual claims, nor does it seek any remedies based in contract law. The *only* legal claim presented in the Complaint is that for infringement of its copyright interests under the Copyright Act. The *only* remedies sought are those specifically authorized by the Copyright Act—damages and declaratory and injunctive relief from Defendants' infringing conduct. Accordingly, the suit "arises under" the Act and jurisdiction is proper.

(Plaintiff's Memorandum Addressing Questions Posed by the Court, at 4 (emphasis in original).) Defendant, inexplicably, does not contest this characterization of the case.[13] The Court, however, cannot agree.

---

12. *Bassett* revived the test first articulated by the Judge Friendly in *T.B. Harms:* a suit "arises under" the Copyright Act if "the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction or asserts a claim requiring construction of the Act." *T.B. Harms*, 339 F.2d at 828 (internal citations omitted). Thirty years after *T.B. Harms*, the Second Circuit modified that test for cases alleging violations of the Copyright Act resulting from breach of a contract. In *Schoenberg*, the Court outlined a complex test for determining whether a claim of infringement in the context of a contractual breach "arises under" the Copyright Act. Under the *Schoenberg* test, a court must determine (1) whether the infringement claim was only incidental to the contract claim; and (2) whether the claim alleges merely breach of a covenant to the contract that is not so material as to create a right of rescission. If the answer to either of these questions is in the affirmative, then the action does not arise under the Copyright Act and the federal court lacks subject matter jurisdiction. *Schoenberg*, 971 F.2d at 932–33. *Bassett* rejected the *Schoenberg* formulation in favor of the original *Harms* test. It is the *Harms* case—which appears to use the same standard as *Bassett*—that is cited approvingly in the following opinions of other Circuits: *MCA Television, Ltd. v. Public Inter-est Corp.*, 171 F.3d 1265, 1269 (11th Cir. 1999); *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969–70 (4th Cir.1990); *Vestron, Inc. v. HBO, Inc.*, 839 F.2d 1380, 1381 (9th Cir.1988); *Royal v. Leading Edge Products, Inc.*, 833 F.2d 1, 2 (1st Cir.1987); *Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir.1987). The D.C. Circuit has yet to consider the issue directly, although in *Costello Publishing Co. v. Rotelle*, 670 F.2d 1035 (D.C.Cir. 1981), it held that the district court must look beyond the face of a counterclaim complaint for copyright infringement to determine whether the counterclaim properly asserted an action for infringement or merely stated a claim for breach of contract. *Id.* at 1045. This distinction was significant in *Costello* not for the question of subject matter jurisdiction, but for the issue of whether an entity was an indispensable party to the counterclaim.

13. *See* Defendants' Memorandum Regarding the Questions Posed by the Court at 3. Unlike personal jurisdiction, however, the defendants cannot waive an objection to subject matter jurisdiction; without it, the Court is not empowered to hear the case, regardless of the wishes of the parties, and the Court must consider this matter *sua sponte*. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); *United States v. Griffin*, 303 U.S. 226, 229, 58 S.Ct. 601, 82 L.Ed. 764 (1938).

It is perfectly clear that the complaint presents contract claims and explicitly seeks remedies based on contract law, for plaintiff seeks to have the Joint Venture Agreement declared null and void. In particular, ¶ 17 of the complaint asserts, "As a result of SSI's wrongful conduct, the Joint Venture Agreement is, and is hereby declared to be, null and void." Although plaintiff has disguised this claim by incorporating it into the "Background" section, ¶ 17 is a common law contract claim seeking the remedy of rescission on grounds of duress, and the determination of this claim is, as explained below, dispositive of the sole issue presented by this case.

Not surprisingly, this case is unlike any that plaintiff has cited. In all of the cases upon which plaintiff relies, conduct respecting a copyright gives rise to both breach of contract and copyright claims. *Bassett,* 204 F.3d 343; *MCA Television Ltd. v. Public Interest Corp.,* 171 F.3d 1265 (11th Cir.1999); *Rano v. Sipa Press, Inc.,* 987 F.2d 580 (9th Cir.1993); *Arthur Young & Co.,* 895 F.2d 967. As the Court in *Bassett* explained, "Such claims characteristically arise where the defendant held a license to exploit the plaintiff's copyright, but is alleged to have forfeited the license by breaching the terms of the licensing contract and thus to infringe in any further exploitation." *Bassett,* 204 F.3d at 347. In contrast, this action involves only contract claims.

 The Court, therefore, has no cause to question the wisdom of *Bassett* or to determine if this Circuit would follow it,

for the instant action differs from that case in two critical respects. First, unlike *Bassett* and the other cases that plaintiff cites, this suit does not involve a breach of a licensing agreement; rather, the claim is that a joint venture agreement was made under duress. Contracts induced by duress are voidable, and the appropriate remedy is rescission. Restatement (Second) of Contracts § 175; *see United States Textiles, Inc. v. Anheuser–Busch Co.,* 911 F.2d 1261, 1271 (7th Cir.1990) ("As a general rule, a party who has been induced through duress to enter into an agreement or contract may pursue one of two remedies; he may seek rescission of the agreement in an equitable proceeding, or he may affirm the contract and sue for damages at law."); *Baker v. Penn Mutual Life Ins. Co.,* 788 F.2d 650, 662 (10th Cir. 1986) ("Rescission is an equitable remedy designed to afford relief from contracts entered into through mistake, fraud, or duress."). *Bassett,* in contrast, explicitly applies only to "claims of infringement arising from, or in the context of, an alleged contractual breach . . . ." *Bassett,* 204 F.3d at 355. Second, as explained more fully below, this action involves an interrelated corporate structure among the parties that could not have been anticipated by *Bassett,* and no matter how the contracts are construed, SSS' copyright claim will vanish. For this reason, plaintiff's copyright claim essentially amounts to a subterfuge for getting plaintiff's dispute into a federal court in this country, as opposed to a court in Pakistan.[14]

14. Typically, a court should look only to the face of the complaint to determine subject matter jurisdiction. *Bassett,* 204 F.3d at 355; *see American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916) ("A suit arises under the law that creates the cause of action."); *Taylor v. Anderson,* 234 U.S. 74, 75, 34 S.Ct. 724, 58 L.Ed. 1218 (1914) ("[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration . . . .").

However, this principle has, in certain instances, been applied with some flexibility. For instance, as previously noted, the D.C.

A closer look at the potential scenarios in this action demonstrates the illusory nature of plaintiff's copyright claim. For SSS ultimately to prevail on its infringement claim, the trier of fact would have to first find that two contracts—the SSI/PTV Agreement and the SSS/SSI License Agreement—were valid, despite defendants' claims that the latter agreement was terminated. In addition, it would have to find that the forum selection clauses in those contracts were either inapplicable or void. Next, the Court would have to find that the third contract—the SSS/SSI Joint Venture Agreement—was voidable on the grounds of duress, as alleged in ¶¶ 14–17 of the Complaint. Under any other interpretation of these contracts—holding either of the first two agreements to be invalid or finding that the Joint Venture Agreement to be valid—SSS would have no rights to any copyright, and therefore no claim for infringement.

 Only if the Joint Venture Agreement is invalidated and the other two contracts are enforced would the copyright infringement claim conceivably survive. Further scrutiny, however, shows that even under this contorted analysis, plaintiff's infringement claim would disappear. The exclusive licensee (SSS) is suing an entity (Prime), which is controlled by the exclusive licensor (SSI) under the Joint Venture Agreement. Under plaintiff's interpretation of the contracts, SSS maintains the rights to the copyright, because the Joint Venture Agreement, which "allow[ed] SSI to take over a controlling position in Prime and [ ] allow[ed] Prime, in turn, to air PTV Programming," (Complaint ¶ 14), is "null and void" (Complaint ¶ 17) as a result of SSS having been forced to assent to the contract under threats of

Circuit required the district court to look beyond the face of a counterclaim for copyright infringement in *Costello. See supra* note 12. Moreover, the Supreme Court has held that "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction...." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Reuber v. United States,* 750 F.2d 1039, 1053 (D.C.Cir.1984). For instance, this Circuit has held that a court must go beyond the face of the complaint and consider its substance in cases brought under the Tucker Act, 28 U.S.C. § 1491. *See Kidwell v. Department of the Army,* 56 F.3d 279, 284 (D.C.Cir.1995) ("The plain language of a complaint, however, does not necessarily settle the question of Tucker Act jurisdiction.").

The Tucker Act gives the United States Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated dam-

ages in cases not sounding in tort." *Kidwell,* 56 F.3d at 283. This jurisdiction is exclusive, but "only to the extent that Congress has not granted any other court authority to hear the[se] claims." *Bowen v. Massachusetts,* 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). The Tucker Act also limits district court jurisdiction in these suits to controversies involving amounts less than $10,000. *Motorola, Inc. v. Perry,* 917 F.Supp. 43, 46 (D.D.C.1996). Litigants, however, have attempted to circumvent the jurisdictional requirements of the Act through artful pleading, in order to bypass federal claims court and to bring suit in federal district court. In *Motorola,* for example, plaintiffs' complaint did not seek damages on its face, but was in fact "intended to secure monetary relief in excess of $240,000 for each plaintiff, surpassing the $10,000 limit imposed by the Tucker Act." *Id.* "[T]he plaintiffs' request for declaratory and injunctive relief ha[d] little if any value distinct from the ability of such judgments to grant monetary relief.... Because the request for declaratory and injunctive relief is 'negligible in comparison with the potential monetary recovery,' jurisdiction may not be invoked under the Tucker Act." *Id.* (quoting *Kidwell,* 56 F.3d at 284).

physical harm.[15] The remedy for a contract that is voidable because one party executed it under duress is rescission; that is, the contract, as plaintiff requests in ¶ 17 of its Complaint, is declared to be null and void. Restatement (Second) of Contracts § 175; *United States Textiles, Inc.,* 911 F.2d at 1271; *Baker,* 788 F.2d at 662.

The sole scenario under which SSS would retain the copyright to PTV Programming would necessarily involve a preliminary finding that the Joint Venture Agreement is rescinded. Yet such a finding would rescind the entire contract, including the provision that allows SSI to take over a controlling interest in Prime. (Memon Decl., Ex. 3, ¶¶ 1.3, 2.2.) Under this interpretation, the legal owner of Prime would therefore be whoever owned it prior to the Joint Venture Agreement. That entity is SSS, which was the sole shareholder in Prime at that time. (Complaint ¶ 13.) If the Joint Venture Agreement were rescinded—which is necessary for SSS to maintain a copyright action—SSS would have no cause to seek relief under the copyright laws, since Prime would be its wholly owned subsidiary.

 Obviously, a parent company cannot sue its wholly-owned subsidiary for infringement without violating basic principles of corporate and copyright law. For instance, the actions of the subsidiary, such as its jurisdictional contacts, may be imputed to the parent under the copyright laws. *Gallagher v. Mazda Motor of America, Inc.,* 781 F.Supp. 1079, 1085 (E.D.Pa. 1992); *Bulova Watch Co., Inc. v. K. Hattori & Co.,* 508 F.Supp. 1322, 1342 (E.D.N.Y. 1981); *K.J. Schwartzbaum, Inc. v. Evans, Inc.,* 44 F.R.D. 589, 590–91 (S.D.N.Y.1968). Also, a parent may be held vicariously liable for the infringing activity of its subsidiary if "the parent has a direct financial interest in the infringing activity, and ... the right and ability to supervise the subsidiary, which is evidenced by some continuing connection between the two in regard to the infringing activity." *Banff Ltd. v. Limited, Inc.,* 869 F.Supp. 1103, 1110 (S.D.N.Y.1994); *RCA/Ariola Intern., Inc. v. Thomas & Grayston Co.,* 845 F.2d 773, 781 (8th Cir.1988)[16]

 As a result, because this action involves a contract action that is based on a claim of duress—for which the remedy is rescission—and involves the unique situation in which the plaintiff would be the legal owner of the corporate defendant were the contract rescinded and plaintiff were to be found to have the right to the programming, it is not governed by *Bassett.* No matter how the Court determines the rights to the copyright under the contracts, no infringement action can be brought by SSS. This action therefore does not "arise under" the federal copyright

---

**15.** These allegations are sufficient to state a case for duress by threat. *LaFrance v. Georgetown University Hospital,* 1988 WL 135066, at *3 (D.D.C.1988); *Goldstein v. S & A Restaurant Corp.,* 622 F.Supp. 139, 144–45 (D.D.C.1985). This is distinguishable from duress by physical compulsion, which occurs when one party physically forces the other party (for example, by literally grabbing that individual's hand and guiding it along the signature line) to sign a contract. A contract made under duress by physical compulsion is void, rather than simply voidable. Restatement (Second) of Contracts § 174.

**16.** Similarly, the Supreme Court has held that a parent corporation and its wholly-owned subsidiary are not legally capable of conspiring with each other under § 1 of the Sherman Act, 15 U.S.C. § 1, *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), because "[a] parent and its wholly-owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one." *Id.* at 771, 104 S.Ct. 2731.

law, and this Court lacks subject matter jurisdiction over the suit.

## CONCLUSION

For the reasons set forth above, this action is dismissed for lack of subject matter jurisdiction. A separate order accompanies this opinion.

## *ORDER*

Upon consideration of defendants' motion to dismiss, it is hereby

**ORDERED** that defendants' motion to dismiss [4–1] is **GRANTED**; and it is

**FURTHER ORDERED** that plaintiff's motion for a hearing on defendants' motion to dismiss [10–1] is **DENIED AS MOOT**; and it is

**FURTHER ORDERED** that plaintiff's motion to compel [16–1] is **DENIED AS MOOT**; and it is

**FURTHER ORDERED** that defendant Jabbar's motion for a protective order [19–1] is **DENIED AS MOOT**; and it is

**FURTHER ORDERED** that plaintiff's complaint is dismissed with prejudice.

**SO ORDERED.**