**SCANDINAVIAN SATELLITE SYSTEM, AS, Appellant,**

v.

**PRIME TV LIMITED, et al., Appellees.**

**No. 01-7104.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 6, 2002.

Decided June 4, 2002.

Gary C. Tepper argued the cause for appellant. With him on the brief was Caroline Turner English.

Robert B. Rosen argued the cause for appellees. With him on the brief was Richard K. Coplon.

Before: EDWARDS, HENDERSON, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Appellant Scandinavian Satellite System ("SSS") claims rights under an exclusive copyright license to broadcast programming created by Pakistan Television Corporation ("PTV"), a government-owned enterprise based in Pakistan that produces news and entertainment programs. On May 25, 1998, PTV granted Sports Star International ("SSI"), a Pakistani company, an exclusive license to broadcast PTV programming. On July 1, 1998, SSI, in

turn, granted SSS, a Norwegian company, the exclusive rights to broadcast PTV programming outside of Pakistan. SSS intended to use Prime TV Limited ("Prime TV"), a British company, to broadcast PTV programming in Europe. Finally, on February 17, 1999, SSS executed a Joint Venture Agreement with SSI, authorizing SSI to assume control over Prime TV, which previously had been a wholly owned subsidiary of SSS, and transferring the exclusive license to broadcast PTV programming from SSS to Prime TV.

SSS now sues Prime TV and two individual defendants for copyright infringement, claiming that Prime TV violated SSS's copyright by broadcasting, or preparing to broadcast, PTV programming in the United States. SSS also contends that the SSS/SSI Joint Venture Agreement is null and void because it was executed under duress. In answer to SSS's complaint, Prime TV moved to dismiss the case on three grounds: lack of personal jurisdiction; principles of international comity arising from related lawsuits in Pakistan; and the existence of forum selection clauses in the disputed SSS/SSI contracts that required the parties to resolve their disputes pursuant to arbitration in Pakistan.

SSS's action is based on a claim of copyright infringement under 17 U.S.C. §§ 106 and 602. The District Court, however, saw the case differently. The District Court ruled that, because the "Joint Venture Agreement is at the core of this action," *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 146 F.Supp.2d 6, 10 (D.D.C.2001), the action is principally one for contract rescission, not copyright infringement. The trial court also held that, even if the Joint Venture Agreement were voided – "which is necessary for SSS to maintain a copyright action – SSS would have no cause to seek relief under the copyright laws, since Prime [TV] would be

its wholly owned subsidiary." *Id.* at 18. The District Court therefore held that it had no subject matter jurisdiction to decide the case, because the matter did not arise under an act of Congress relating to copyrights. *See* 28 U.S.C. § 1338(a) (federal courts have subject matter jurisdiction over matters "arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks").

Because we find that the District Court has subject matter jurisdiction over appellant's complaint, we reverse and remand for further proceedings. SSS's complaint is founded on a claim of copyright infringement arising under the Copyright Act for which it seeks declaratory and injunctive relief from appellees' infringing conduct. This is sufficient to establish subject matter jurisdiction under 28 U.S.C. § 1338(a). It does not matter that appellees may interpose a contract defense based on the Joint Venture Agreement; rather, the important point here is that SSS's claim rests solely on its asserted copyright license. Furthermore, we reject the District Court's holding that SSS has no cause to seek relief from Prime TV, because Prime TV is purportedly SSS's wholly owned subsidiary. The mere claim of a parent-subsidiary relationship is not enough to decide this issue, for the court must first determine whether SSS does in fact control Prime TV. Indeed, in this case, Prime TV claims to be controlled by SSI, not SSS.

Because the District Court erred in dismissing the case solely on the basis of subject matter jurisdiction and, thus, failed to rule on appellees' numerous other arguments for dismissal, we reverse and remand for further proceedings.

## I. BACKGROUND

PTV executed an agreement with SSI in May 1998 granting SSI "[e]xclusive world

wide rights" to use PTV programming. *See* Am. Compl. ¶¶ 7, 8, *reprinted in* Joint Appendix ("J.A.") 227; Agreement Between PTV and SSI 1 (May 25, 1998), *reprinted in* J.A. 237. SSI then transferred exclusive rights to SSS to broadcast PTV programming outside of Pakistan. *See* Agreement Between SSI and SSS ¶ 1 (July 1, 1998), *reprinted in* J.A. 234. SSS, then the sole shareholder of Prime TV, planned on using Prime TV to broadcast PTV programming in Europe. Am. Compl. ¶ 13, *reprinted in* J.A. 228. However, in February 1999, before SSS had undertaken any broadcast operations, Raja Nasir Hussain, the principal of SSS, signed a Joint Venture Agreement with SSI. *Id.* ¶ 14. The Joint Venture Agreement gave SSI a controlling interest in Prime TV and transferred SSS's license to broadcast PTV programming to Prime TV. *Id.* ¶ 14. Hussain now claims that defendant Yusaf Baig Mirza "coerced" him into signing the Joint Venture Agreement by threatening Hussain and his family. *Id.* ¶¶ 14, 16.

SSS filed suit in the District Court seeking a declaratory judgment that SSS (not Prime TV) owns the copyright in PTV programming, damages for copyright infringement, an injunction barring Prime TV from using PTV programming, and attorney's fees. *Id.* ¶¶ 26, 29. SSS's complaint asserts that "Prime [TV] will broadcast, or has broadcasted PTV Programming in the District of Columbia," and that "Prime [TV] is importing into the United States, without the authority of the owner of [the] copyright, copies ... of PTV Programming ... in order to broadcast PTV Programming in the United States for profit." *Id.* ¶¶ 19-20. The defendants moved to dismiss the case, arguing that the choice of law and choice of forum clauses in all three contracts required the resolution of any disputes to take place in Pakistan under Pakistani law; that the

principles of international comity dictated that the District Court defer to two pending court actions in Pakistan involving the same controversy; and that the court had no personal jurisdiction over the defendants. *See* Defs.' Mem. in Supp. of Mot. to Dismiss, *reprinted in* J.A. 22.

Before ruling on the motion to dismiss, the District Court sent a letter to counsel requesting briefing on whether the court had subject matter jurisdiction over the case and whether SSI was an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. *See* Letter to Counsel (March 12, 2001), *reprinted in* J.A. 344. All parties subsequently agreed that the District Court properly had subject matter jurisdiction over the dispute. The District Court, however, granted the defendants' motion to dismiss, holding that the court had no subject matter jurisdiction over the dispute because the action was one for contract rescission, not copyright infringement:

> The necessity of determining whether the Joint Venture Agreement was executed under duress – and, as a result, whether it is null and void – essentially preempts SSS' copyright claim. If the contract is found to be valid, then SSS has no rights to broadcast PTV Programming, and it cannot assert any copyright action. If the agreement is voided, SSS maintains the rights to the PTV Programming – but also retains its controlling interest as the sole shareholder in Prime. So while SSS would own the copyright license (assuming that the License Agreement was not terminated), the defendants in this action would be (1) a wholly-owned subsidiary of SSS [Prime TV], and (2) two individuals who would have no control over that subsidiary. [T]his unique posture means that this action does not "arise under" the federal copyright laws, but

amounts to nothing more than a straightforward contract action for rescission of the Joint Venture Agreement. *Scandinavian Satellite,* 146 F.Supp.2d at 10. SSS appeals from this decision.

## II. DISCUSSION

The District Court dismissed appellant's complaint for lack of subject matter jurisdiction solely on a motion to dismiss. Therefore, in addressing this issue, we "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, —— n. 1, 122 S.Ct. 992, 995 n. 1, 152 L.Ed.2d 1 (2002).

28 U.S.C. § 1338(a) grants district courts subject matter jurisdiction to hear "any civil action arising under any Act of Congress relating to ... copyrights." As this case demonstrates, the scope of federal subject matter jurisdiction to hear contract disputes involving copyright ownership "poses among the knottiest procedural problems in copyright jurisprudence." 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.01[A] (2002). It is clear that not every complaint that mentions the Copyright Act "arises under" that law for the purposes of § 1338(a). *See, e.g., Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 347 (2d Cir.2000). Thus, for example, a "suit on a contract does not 'arise under' the copyright laws even though a copyright may have been the subject matter of the contract." 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3582 (2d ed.1984). However, the mere existence of an underlying contract dispute in a suit relating to a copyright does not deprive a court of jurisdiction to hear an action for copyright infringement. *See* 28 U.S.C. § 1367; *Bassett,* 204 F.3d at 355. So where does this take us?

Fortunately, the search for the proper analytical framework pursuant to which to assess claims of subject matter jurisdiction under § 1338(a) is not painstaking. In *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir.1964), in a seminal opinion by Judge Henry Friendly, the Second Circuit held that

an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction, or asserts a claim requiring construction of the Act, ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.

*Id.* at 828 (citations omitted). This decision has guided the federal courts for many years in judicial determinations of subject matter jurisdiction under § 1338(a). *See, e.g., Gibraltar, P.R., Inc. v. Otoki Group, Inc.,* 104 F.3d 616, 619 (4th Cir.1997); *Royal v. Leading Edge Prods., Inc.,* 833 F.2d 1, 2 (1st Cir.1987). Recently, in *Bassett,* the Second Circuit reaffirmed the reach of *T.B. Harms,* holding that federal courts have jurisdiction to hear a dispute under § 1338(a) "[w]hen a complaint alleges a claim or seeks a remedy provided by the Copyright Act." 204 F.3d at 355. We agree with these holdings of our sister circuit, for we can find no better interpretation of § 1338(a).

Appellees cite *International Armor & Limousine Co. v. Moloney Coachbuilders, Inc.,* 272 F.3d 912 (7th Cir.2001), in an effort to defend the District Court's judgment in this case. *International Armor* involves an application of § 1338(a) to an alleged trademark infringement. Moloney, a car customizer, sold his business assets, including the name "Moloney Coach Builders," and agreed not to com-

pete in certain ways with the buyer. *Id.* at 913. The buyer subsequently complained about Moloney's use of his name in his new enterprise; Moloney then filed suit, seeking a declaration that the use of his name did not violate the Lanham Act. 15 U.S.C. § 1125. The buyer counterclaimed, arguing that Moloney's use of his name violated the parties' sales contract and the Lanham Act. *Id.* The Seventh Circuit held that, because "the only serious dispute is how the contracts ... allocate ownership rights in the Moloney name and business history, ... [t]he dispute arises under the law of contracts; any trademark claims are entirely derivative of the contract issues." *Id.* at 916. The court therefore concluded that the case did not "arise under" 28 U.S.C. § 1338(a) and dismissed the case for lack of subject matter jurisdiction. *Id.* at 918.

In reaching this conclusion, the court in *International Armor* construed *T.B. Harms* as holding that "a dispute about the ownership of a copyright does not arise under federal law." *Id.* at 915. Respectfully, we believe that this is a misguided interpretation of the *T.B. Harms* test. And it surely does not square with the Second Circuit's application of *T.B. Harms* in *Bassett*, a point conceded by appellees' counsel during oral argument. Furthermore, in our view, the Seventh Circuit's position is premised on an unduly narrow and unrealistic reading of § 1338(a).

■ Countless copyright *ownership disputes* indubitably arise under an Act of Congress relating to copyrights. For example, a dispute that turns on whether a copyrighted work was created independently or as a "work made for hire" is an *ownership dispute* that unquestionably arises under the Copyright Act. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). Similarly, as even the court in

*International Armor* recognized, a dispute over copyright ownership that seeks a remedy that is only available under the Copyright Act also arises under federal law. *See* 272 F.3d at 916-17; *see also Bassett*, 204 F.3d at 355. Therefore, when a complaint alleges a claim or seeks a remedy provided by the Copyright Act, subject matter jurisdiction under § 1338(a) is not lost merely because a contract ownership dispute may be implicated.

■ The appellant in the instant case, unlike the complainant in *International Armor*, sought remedies expressly provided by the Copyright Act, *i.e.*, injunctive relief to halt claimed infringement and attorney's fees. *See* 17 U.S.C. § 502(a) (authorizing injunctive relief); *id.* § 505 (authorizing award of a "reasonable attorney's fee"). Appellant therefore satisfied the requirement of *T.B. Harms* that the complaint must involve "a remedy expressly granted by the Act." 339 F.2d at 828. It does not matter that the appellees may raise a contract defense which rests on the disputed Joint Venture Agreement. What matters is that SSS's claim rests solely on its asserted copyright license. SSS plausibly asserts that the July 1, 1998 agreement between SSI and SSS granted SSS an exclusive copyright license to broadcast PTV programming outside of Pakistan and that this copyright has been infringed. On a motion to dismiss, the District Court was limited to these allegations in the complaint; therefore, Prime TV's purported contract defense did not defeat the court's jurisdiction to hear the complaint. *Cf. Taylor v. Anderson*, 234 U.S. 74, 75, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914) (stating "whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, ... must be determined from what necessarily appears in the plain-

tiff's statement of his own claim in the bill or declaration").

\* \* \* \*

The District Court justified its dismissal of appellant's case on an alternative ground: the trial court held that if the Joint Venture Agreement is found not to bar SSS's lawsuit, SSS still would have no claim under the copyright laws, because SSS (the parent company) could not sue Prime TV (its wholly owned subsidiary). The District Court assumed that "a parent company cannot sue its wholly-owned subsidiary for infringement without violating basic principles of corporate and copyright law." *Scandinavian Satellite*, 146 F.Supp.2d at 18. We disagree.

"Corporations may bring actions against each other, even if … one corporation is the parent or subsidiary of the other." 9 VICTORIA A. BRAUCHER, ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 4229 (1999). It is true that the law sometimes disregards the separate corporate forms of parent and subsidiary corporations to hold one accountable for the actions of another, especially when a failure to do so "would work fraud or injustice." *Taylor v. Standard Gas & Elec. Co.*, 306 U.S. 307, 322, 59 S.Ct. 543, 550, 83 L.Ed. 669 (1939); *see also First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 632, 103 S.Ct. 2591, 2603, 77 L.Ed.2d 46 (1983) (declining "to adhere blindly to the corporate form where doing so would cause such an injustice"). However, before it can be found that a parent and subsidiary are one entity in the eyes of the law, it must first be determined whether the subsidiary is in fact controlled by the parent. *See, e.g., NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 403, 80 S.Ct. 441, 443-44, 4 L.Ed.2d 400 (1960).

In this case, Prime TV claims to be controlled by SSI, not SSS; and, belatedly, SSS claims that Hussain, not SSS, owns Prime TV. The District Court, at a minimum, must determine the actual relationship between SSS and Prime TV, including whether the extent of control exercised by SSS over Prime TV rises to the level necessary to disregard their separate corporate identities. Without any such analysis, the District Court had no basis upon which to conclude that SSS was precluded from suing Prime TV.

The appellees cite *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), for the proposition that a parent and its wholly owned subsidiary have a "complete unity of interest," and, therefore, must be viewed as one. *Id.* at 771, 104 S.Ct. at 2741. *Copperweld*, however, addressed the limited issue of whether a parent corporation and its wholly owned subsidiary are legally capable of conspiring with one another under § 1 of the Sherman Act, 15 U.S.C. § 1. *Id.* at 777, 104 S.Ct. at 2744-45. That inquiry focused on "Congress' decision to exempt unilateral conduct from § 1 scrutiny," not the extent of control exercised by every parent company over a subsidiary. *Id.* at 776, 104 S.Ct. at 2744. Because *Copperweld* does not purport to answer the question now facing this court, it is not dispositive. Instead, we are guided by the basic principle that "ownership, alone, of capital stock in one corporation by another, does not create an identity of corporate interest between the two companies." *Chicago, Milwaukee & St. Paul Ry. Co. v. Minneapolis Civic & Commerce Ass'n*, 247 U.S. 490, 500, 38 S.Ct. 553, 557, 62 L.Ed. 1229 (1918). The unity of interest cannot be determined without an examination of the control exercised by the parent over the subsidiary.

\* \* \* \*

We will therefore reverse the District Court's dismissal on grounds of subject matter jurisdiction and remand the case for further proceedings. On remand, SSS faces a number of hurdles, any one of which may well result in another dismissal. One issue, recognized but not decided by the District Court, is whether SSI is an indispensable party to this action under Rule 19 of the Federal Rules of Civil Procedure. Another issue is whether SSS's claims for relief are moot, in whole or in part, because SSS's copyright license has expired. Another is whether the forum selection clauses in the disputed agreements preclude appellant's action in this forum. Yet another potentially dispositive issue is whether the action should be dismissed in consideration of international comity, because of the pending litigation in Pakistan. And, finally, if SSS does in fact own and control Prime TV, then there may be a question as to whether SSS has standing to sue Prime TV. We leave these matters to the District Court to decide in the first instance.

### III. CONCLUSION

For the foregoing reasons, the judgment of the District Court is reversed and the case is remanded for further proceedings.